# Ellington *v.* Charleston.

*Detinue for Horse.*

1. *Mortgage ; what constitutes.* — An instrument of writing, very inartificially drawn, which shows on its face that the relation of debtor and creditor existed between the parties, and by which it is declared that the creditor "shall have a lien" on a horse, the property of the debtor, "to have and to hold" until the debt its paid, operates as a mortgage, although it contains no words of conveyance.

2. *Mortgagee's right to possession of property.* — In the absence of a stipulation to the contrary in the mortgage, the mortgagee of personal property has the legal title, which draws to it the right of possession ; and a stipulation that the mortgagor shall feed the horse, which is the subject of the mortgage, is not sufficient to show that he was to retain the possession, when it also appears that he was to use the horse in cultivating lands rented from the mortgagee, and that he has abandoned the lands.

APPEAL from the Circuit Court of Lowndes.
VOL. LI.

[Ellington *v*. Charleston.]

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Mary Charleston against Jesse Ellington, to recover a horse, which was in the defendant's possession at the commencement of the suit, and which he claimed under an instrument of writing executed by the plaintiff, of which the following is a copy : —

" State of Alabama, Lowndes county.  Contract entered into this day, between Jesse Ellington and Mary Charleston and three *sons*, Henry, *Eliza*, and Barney :  We do hereby covenant and agree, that the said Jesse Ellington, in the first part, agrees to let Mary Charleston, Henry and Eliza have the same lands that she worked on last year, again this year, and that they are to pay the said Ellington one hundred dollars rent for the said land for the year 1873 ; said rent to be due on or by the 15th day of October next ; and we do further consent and agree, that as we do owe said Jesse Ellington a balance on last year's rent and advances, and now to secure the payment of said old balance, which amount is fifty-one dollars and ninety cents, that we give said Ellington a lien on one horse, Charley, to have and to hold until all of the above advances, both rent and all the advances, and all the crop to be subject for rent and advances, until the same is *payed*, and the remainder of the crop to belong to the said Mary Charleston and sons. They feed themselves, [and] horse, and furnish their own implements ; and said Jesse Ellington agrees to pay to Mary Charleston, for son Barney, for this year, seventy-five dollars, and *rashins ;* and said seventy-five dollars to be due December 20, 1873.  Witness our hands and seals, this January 10th, 1873." (Signed by said Mary Charleston, and attested by three witnesses.)

" On the trial," as the bill of exceptions states, " the plaintiff testified, as a witness for herself, that she was the owner of the horse sued for, prior to the 10th January, 1873 ; that she rented and cultivated land belonging to the defendant in the year 1872, and owed him about fifty dollars at the end of the year ; that she had never paid said sum, and had never executed any mortgage on the horse to the defendant, to secure said sum, or for any other purpose.  The value of the horse, and the defendant's possession at the commencement of the suit, were also shown ; and here plaintiff closed.  The defendant then examined as a witness Jesse Ellington, junior," who testified to the execution and attestation of the instrument above set out, which was then read in evidence ; also, " that plaintiff was indebted to defendant, on the 10th January, 1873, for land rent and advances, $51.90, and acknowledged at that time that she owed him that amount, and rented land from him again that day ; and that she afterwards abandoned the land she had

rented, carried off the boy Barney, and abandoned her contract with defendant." This being all the evidence, the court charged the jury, " that the said paper writing did not vest in the defendant any right to the possession of said horse, which can avail him in this suit; " to which charge the defendant excepted, and which he now assigns as error.

R. M. WILLIAMSON, for appellant, cited *Wood* v. *Dudley*, 8 Vermont, 435; *Doak* v. *Bank*, 6 Ind. 309; *Langdon* v. *Buell*, 9 Wendell, 80; *Jones* v. *Smith*, 2 Vesey, 378.

CLEMENTS & ENOCHS, *contra*, cited *Harbinson* v. *Harrell*, 19 Ala. 753; *O'Neal* v. *Wilson*, 21 Ala. 288; *Smith* v. *Taylor*, 9 Ala. 633; Hilliard on Mortgages, vol. 1, pp. 1, 2; 2 Ib. 137.

BRICKELL, J. — In the construction of written instruments, the intention of the parties must govern; and to ascertain that intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view. *Strong* v. *Gregory*, 19 Ala. 147; *Bryant* v. *Bryant*, 35 Ala. 315. When the written contract between appellant and appellee, given in evidence, was entered into, the relation of debtor and creditor existed between them. The appellee was indebted to the appellant, for a balance for rent of land and advances during the year 1872, which was due, and had incurred a debt, to become due, for the rent of land in 1873. The instrument recites the existence of this indebtedness, and declares that the appellant shall have a lien on the horse in controversy, " to have and to hold," until its payment. There is a stipulation that the appellee shall feed the horse. The instrument is drawn very inartificially, and is very obscure in many of its expressions. The general rule is, that every conveyance of property as a security for a debt shall operate as a mortgage. There are not, in this instrument, any technical words of transfer, or conveyance; but its expression that the creditor shall have a lien on the horse, to have and hold until the payment of the debts, is as significant of the intention to charge the horse with their payment, and that this lien should be defeated only by payment, as any technical words which could have been used. They clearly express the popular acceptation of a mortgage, which is not materially different from its legal effect. Considering the relation of the parties, the words of the instrument, and the objects they must have had in view, we cannot hesitate to declare it is a mortgage. If that is not its character, we do not see what operation or effect can be given it.

VOL. LI.

2. A mortgagee of chattels has the whole legal title, subject to defeasance by the payment of the mortgage debt. This legal title draws to itself the right of immediate and continuous possession, unless the mortgage stipulates for the mortgagor's possession until default is made in the payment of the mortgage debt. 2 Hilliard Mort. § 43; *Pickard* v. *Low*, 3 Shep. (Maine) 43; *Duval* v. *McLoskey*, 1 Ala. 729; *Mansony & Hurtell* v. *U. S. Bank*, 4 Ala. 745. This instrument contains no stipulation, postponing the mortgagee's right of possession. The appellee not having an absolute or qualified property in the horse, and no right of immediate possession, cannot maintain the action of detinue. *Holmes* v. *Bell*, 3 Cush. (Mass.) 322. Whatever were her rights when this action commenced, they were purely equitable. We incline to the opinion, that under the contract the appellee would have been entitled to the use of the horse in cultivating the lands rented of appellant. It appears she abandoned the cultivation of these lands, prior to the commencement of this suit; and the question of her right to the use of the horse does not arise.

The charge of the circuit court is erroneous; the judgment is reversed, and the cause remanded.