# Evington *v.* Smith Brothers.

*Trover for Conversion of Bales of Cotton.*

1. *What title will support action.*—Trover can not be maintained by a party who had no legal estate or interest in the property converted, but only a lien created by contract, or a right to charge it with the payment of a debt.

2. *Construction of contract, as to intention of parties, and how ascertained.* In the construction of a written contract, with a view to ascertaining the intention of the parties, regard must be had, not only to the nature of the instrument itself, but also to the condition or relation of the parties, and the objects contemplated by them.

3. *Instrument construed as creating lien only, and not as mortgage.*—A written instrument, given in consideration of advances made and to be made by the grantees to the grantor, and using these words: "I hereby declare the aforesaid advances, or the amount thereof, *shall constitute a lien on my crop* grown on the G. plantation in said county this year, in accordance with the act approved January 15th, 1866; and to farther secure the payment of the aforesaid obligation, I also hereby *bargain, sell and convey* unto the said S., agent, or assigns, the *following described personal property*,"—does not operate as a mortgage of the crop, nor convey any legal estate or interest therein.

APPEAL from the Circuit Court of Choctaw.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Smith Brothers, suing as partners, against William H. Evington, to recover damages for the alleged conversion of five bales of cotton; and was commenced on the 3d April, 1879. The cause was tried on issue joined, but the record does not show what pleas were filed. The cotton in controversy was raised by one George Washington, a freedman, during the year 1877, on a plantation in

Sumter county which he was cultivating, called the "Gilmore place;" and it was delivered by him to the defendant, to whom he was indebted for supplies furnished during the year to enable him to make a crop. The plaintiffs claimed the cotton under a written instrument executed to them by said George Washington, which was offered in evidence on the trial, after proof of its execution, and which was in these words:

"The State of Alabama, Sumter County. On or before the 15th day of October, 1877, I promise to pay to the order of Smith Brothers one hundred and fifty dollars, for value received. The right of exemption under the laws of Alabama is hereby waived, as provided for in section seven, article fourteen, in the constitution of the State of Alabama. The consideration of this obligation is an advancement made by said Smith Brothers, of money and provisions to the above amount, *bona fide*, for the purpose of making a crop this year, 1877, and without which it would not be in my power to procure the requirements to make such crop; and I hereby declare the aforesaid advances, or the amount thereof, shall constitute a lien on my crop grown on the Gilmore plantation in Sumter county, Alabama, this year, in accordance with the act approved January 15th, 1866; and to further secure the payment of the aforesaid obligation, according to the tenor and effect thereof, I hereby also bargain, sell and convey to the said Smith Brothers, or agent, or assigns, the following described personal property, to-wit," two mules, one wagon, and one double-barrelled shot-gun, "for the sum of one hundred and fifty dollars, which amount has been paid to me, and for which receipt is herewith given. In default of payment at maturity of the aforesaid obligation, the said Smith Brothers, agent or assigns, are hereby authorized to take said property into their possession, sell the same as they may deem best, and apply the proceeds thereof to the payment of this obligation, and expenses incident to the execution of this trust. Upon this condition, nevertheless, if said obligation is paid at maturity, then this conveyance to be null and void. And it is further agreed, that if the said Smith Brothers shall advance to the said George Washington, during the present year, any money or provisions over and above the amount of the note, this instrument shall also stand as security for the same, as fully as if included in said note. And the said George Washington hereby declares, that the above conveyed property is his own, and that there is no lien or incumbrance on the same. In further consideration of the premises, I hereby also declare, that there will be no outside crops on said place, owned by my wife, daugh-

[Evington v. Smith Brothers.]

ter, or any one whatsoever, but that this instrument is to constitute a lien on the entire crop raised on said place this year.   Witness my signature, this 11th day of May, 1877." (Signed by said George Washington, by making his mark, and attested by one witness.)

"It was admitted by plaintiffs, that their debt was not due for advances to make a crop, nor any part of the same, but was for other and a different consideration."   As to the circumstances attending the execution of this instrument, one of the plaintiffs thus testified :   "Witness was present when George Washington signed said instrument, and saw him sign it; does not remember whether it was read over to him or not, but knows it was explained to him.   After said instrument was signed, sold said Washington goods to the amount of $73.95, which amount said Washington now owes on said sale.   The articles sold were not for advances, or supplies necessary to make a crop, but were for other goods and articles."   Said George Washington testified, as a witness for the plaintiffs, that he went to the plaintiffs' store, on receiving a message from them, and they paid him four dollars, balance due on some cotton;   "that plaintiffs then told him, if he would sign another paper, they would let him have some things;   that he signed a paper, but did not know what was in it, as he was drinking, though he remembered signing the paper;   that he bought some things at that time, and went back, at different times during the year, and bought things;"   and that when he delivered the cotton to the defendant, to whom he was indebted for supplies furnished, and who had a mortgage on his crop (which was not produced on the trial), "he told him that plaintiffs had a mortgage on the cotton."

On the evidence adduced, all of which the bill of exceptions purports to set out, the court charged the jury, "that the instrument offered in evidence by the plaintiffs was a mortgage, and conveyed to them the crop of George Washington, if they believed from the evidence that it was duly and legally executed;" and this charge, to which the defendant excepted, is now assigned as error.

THOS. W. COLEMAN, for appellant, cited 4 Kent's Com. 151; *Stern v. Simpson & Johnson,* 62 Ala. 194; *Gafford v. Stearns,* 51 Ala. 442; *Boswell & Woolley v. Carlisle, Jones & Co.,* 55 Ala. 568; *Micou v. Ashurst,* 55 Ala. 514.

GLOVER & TAYLOR, contra, cited *McLester v. Somerville & McEachin,* 54 Ala. 670; *Dawson v. Higgins,* 50 Ala. 49; *Mervine v. White,* 50 Ala. 388; *Ellington v. Charleston,* 51 Ala.

166 ; *Bickley v. Keenan & Co.,* 60 Ala. 293 ; Freeman on Chattel Mortgages, 56.

BRICKELL, C. J.—The only point, to which the instructions of the Circuit Court were directed, is, whether the instrument under which the appellees deduce title to the cotton in controversy is a mortgage, passing title, or the mere declaration of a lien or charge, intended as security for the payment of the debt owing to the appellees. If the latter is the true character of the instrument, it is certain no right of property passed to the appellees, and trover can not be maintained by them.—*Treadway v. Treadway,* 56 Ala. 390 ; *Folmar v. Copeland,* 58 Ala. 588 ; *Stern v. Simpson,* 62 Ala. 194.

In the construction of all written instruments, the purpose is to ascertain and give effect to the intention of parties. To ascertain the intention, regard must be had, not only to the nature of the instrument, but also to the condition of the parties, and the objects they had in view. The relation of the parties when the instrument was executed, was that of debtor and creditor ; and the continuance of the relation for a definite period, and a probable increase of the indebtedness by future advances, was contemplated. As to the crop, the instrument contains no words of transfer, or conveyance. It is simply declared, the advances, or debt, *shall constitute a lien on my crop, grown on the Gilmore plantation in Sumter county, Alabama, this year, in accordance with the act approved January 15th, 1866 ;* while, as to the other property covered by the instrument, apt words of transfer and conveyance are used—the words *bargain, sell, and convey.* No precise form of words is necessary to constitute a mortgage. When a clear intention is manifested to charge particular property with the payment of a debt, in a court of equity the instrument will operate as a mortgage. In courts of law, in reference to personal property, the word *mortgage,* and other similar expressions, indicating the nature of the contract into which the parties are entering, have been deemed sufficient to pass the legal title.—*Mervine v. White,* 50 Ala. 388 ; *Ellington v. Charleston,* 51 Ala. 166. It is a question wholly of intention ; and the words of this instrument distinguish between the crop, and the other property. On the one, a lien in accordance with the statute which creates a *crop lien,* as it is familiarly termed, is declared. Of the other property, a bargain, sale, and conveyance is made, which is subject to be defeated on conditions expressed. The one declares a *lien* only, which does not pass a right of property ; the other passes the right of property. The two can not be con-

(26)

founded, and construed as of the same legal import, without violence to the intention of the parties.

The result is, the Circuit Court erred in the instructions given the jury; and its judgment is reversed, and the cause remanded.