WHITE SEWING MACHINE COMPANY *v.* SHADDOCK.

Opinion delivered May 28, 1906.

1.  CONTRACT OF EMPLOYMENT—DISSOLUTION.—Where a contract for the employment of a sewing machine agent provides that he should have exclusive agency in certain territory, but that the contract might be dissolved by either party on notice, a notice from the employer to the employee cutting out part of the territory was, in effect, a dissolu-

tion of the old contract and, when accepted, the creation of a new one. (Page 223.)

2.   SAME—EFFECT OF DISSOLUTION.—Where a sewing machine company, in employing an agent and giving him certain exclusive territory, reserved the power in either party to dissolve the contract on giving notice, the power of the company to dissolve the contract would not apply to machines which the agent had purchased before the contract was dissolved.   (Page 224.)

3.   SAME—DAMAGES.—Where a sewing machine company, in employing an agent to sell its machines, allotted to him certain exclusive territory, and reserved the power to dissolve the contract upon giving him notice, on a subsequent dissolution of the contract it will be liable to him for loss of profits on sales of its machines made within his territory by other salesmen before dissolution of the contract, and also for loss of profits on machines purchased by him but not sold before dissolution of the contract, so far as caused by its having placed other salesmen in his territory after the contract was dissolved, but not for loss of profits on sales made by other salesmen in his territory after the contract was dissolved.   (Page 224.)

Appeal from Dallas Circuit Court; *Zachariah T. Wood,* Judge; reversed.

### STATEMENT BY THE COURT.

The White Sewing Machine Company, of Cleveland, Ohio, brought this action against T. J. Shaddock and the other defendants who were sureties on a bond executed by him to the plaintiff, to recover the aggregate amount of two promissory notes executed by Shaddock for the purchase price of sewing machines purchased by him of plaintiff.   The machines were sold and delivered pursuant to a written contract entered into between Shaddock and the Machine Company whereby the latter agreed to sell sewing machines to the former at prices set forth in the contract, and "to establish no other dealer within the following territory for the sale of the White Machines, during the continuance of this contract: all of Ouachita County in the State of Arkansas east of Ouachita River and the adjoining territory in Dallas and Calhoun counties that is close to and adjacent to Bearden, Ark."

Shaddock undertook by the terms of the contract, to purchase and resell machines exclusively for plaintiff.   The contract contained the following clause:   "This agreement to take effect from and after its acceptance by said first party, which accep-

tance is evidenced only by the signature of an officer of the said first part hereto, and the same is to continue in force until dissolved by mutual consent; but it may be dissolved by either party giving notice, or, in case of violation of this agreement by second party, the first party may cancel it without notice." Shaddock executed and delivered to plaintiff a bond, with his co-defendants as sureties, conditioned that he would promptly pay all indebtedness to plaintiff then existing or which might thereafter be incurred. Shaddock purchased machines from plaintiff pursuant to the contract, and executed the two notes sued on, dated respectively February 21, 1903, and February 27, 1903.

The defendants answered, admitting the execution of the contract, bond and notes, but pleaded, as a counterclaim against plaintiff, that the latter had violated the contract by establishing other dealers for sale of machines in the territory allotted to defendant Shaddock, and that by reason thereof he had sustained damages in the sum of $1,500 on account of loss of profits on resales of machines.

The jury returned a special verdict in favor of defendants, in the following form, viz.:

"1. We, the jury, find damages for the defendant to the value of notes and interest.

"2. The damages were assessed on thirty-two sewing machines sold in defendant's territory by other agents of the White Sewing Machine Company."

Judgment was rendered against plaintiff for the costs of the action, and plaintiff appealed.

*E. H. Vance, Jr.,* for appellant.

1. Appellant had the right to modify or cancel the written contract, of which appellee had due notice. After this he purchased machines, and gave notes, and thereby ratified the change.

2. No damages are shown by the evidence.

3. Instructions 3 and 5 are certainly erroneous and misleading.

*Thornton & Thornton,* for appellees.

McCulloch, J., (after stating the facts.) The evidence adduced at the trial showed that appellant wrote a letter to Shad-

dock on February 13, 1903, giving notice of a dissolution of the contract, in so far as it related to the territory in Ouachita County, but that this notice was subsequently withdrawn, and he thereafter purchased more machines from appellant. Shaddock testified that the notice was renewed by a letter from appellant's agent, S. B. Kirby, dated April 8, 1903, forbidding him the territory in Ouachita County. On November 28, 1903, plaintiff gave notice to Shaddock of dissolution of the entire contract, so far as it related to exclusive control of territory.

The only testimony introduced by appellees tending to establish damages was that of Shaddock himself, which was as follows:

"I was damaged by the sales of other dealers of the machine in my territory, but it is hard for me to estimate it. Ritchie sold in the western part of Calhoun County, W. H. Henry at Holly Springs in southern part of Dallas, and E. A. Acruman at Fordyce. My profits on each machine depends on circumstances. It ranges from $15 to $20.  *  *  *  I had to sell my machines the best I could, on account of the other dealers selling in my territory. I would make trades for cattle, and would take in exchange secondhand machines in order to make a deal. I had on hand 35 machines altogether of different grades, including secondhand machines taken in exchange. I could have sold most of the machines sold by the other dealers in my territory if they had not sold any there. The territory east of the Ouachita River in Ouachita County was my main territory."

The verdict of the jury assessing damages is not sustained by the evidence.

Each of the parties to the contract reserved therein the privilege of dissolving it at any time upon notice to the other. Appellant's notice to appellee Shaddock cutting out of the contract the territory in Ouachita County was, in effect, a dissolution of the contract to that extent, though neither party had the right to alter the contract without the consent of the other. Appellee Shaddock then could have treated the contract as dissolved *in toto* by appellant, or could have accepted the proposed modification. He could not reject the proposed modification, and at the same time continue the original contract in force against appellant's consent; the notice of modification was in effect a dissolution of the

old contract and, when accepted, the creation of a new one.

But appellant's privilege of dissolving the contract at any time upon notice could not apply to machines which Shaddock had already purchased for resale in the territory at the time of the attempted dissolution. To that extent the contract was so far performed by Shaddock that appellant could not dissolve it so as to deprive him of the right to sell the machine in any part of the stipulated territory. A construction of the contract which would give appellant that power would be so manifestly harsh and unjust to Shaddock that it can not be deemed to have been reasonably within the contemplation of the parties. Appellant would be liable to Shaddock for loss of profits on sales which he was deprived of making by reason of appellant's alleged violation of the contract in putting other salesmen or dealers into the territory allotted to him before the date of modification; but the proof fails to show that any sales were made by other salesmen or dealers in the territory before that date, or that Shaddock was deprived of making sales in the territory. Therefore he sustained no damages on that account, as far as disclosed by the evidence. Appellant would also be liable to Shaddock for any damages resulting from sales made by other salesmen or dealers put into the territory after the date of the modification, in so far as they deprived him of profit on machines which he had already purchased when the notice of modification was given. But sales of machines made by other dealers after the date appellant modified the territorial limits of the contract are not to be considered, except to the extent that they may have interfered with or prevented resales by Shaddock of his own machines which he had purchased from·appellant pursuant to the contract before the modification. Now, it is not shown that he failed to make timely sales of all the machines which he purchased from appellant, nor is there any proof of any loss of profit on them except the general statement of Shaddock in his testimony that he had to sell the machines in the best way he could by taking cattle and secondhand machines in exchange. He does not show any loss of profits on those machines, but contends only that other dealers put into the territory by appellant made sales which he could have made but for their interference, and that he was thereby deprived of profit he could have earned on other machines which he had bought and

re-sold. The jury assessed damages altogether upon profits on sales made by other dealers.

We are of the opinion that the evidence is insufficient to sustain the verdict, and the judgment is therefore reversed, and the cause remanded for a new trial.

HILL, C. J. and WOOD, J., dissenting.