Argued December 7; reversed December 31, 1934; rehearing denied
February 13, 1935

# KRAUSE *v.* BELL POTATO CHIP COMPANY

(39 P. (2d) 363)

*Gunther F. Krause,* of Portland, for appellant.
*Wilber Henderson,* of Portland, for respondent.

BEAN, J. The plaintiff appeals from the judgment of the trial court entered upon a verdict of the jury by direction of the court. On August 31, 1931, plaintiff and defendant entered into a contract in writing, under which contract plaintiff was employed by defendant for an indefinite period of time to sell defendant's products in a certain territory described in the contract. The defendant sold the plaintiff an automobile truck to use in the business. We quote a part of the contract, as follows:

"The party of the first part does hereby agree to sell unto the party of the first (second) part (delivery to be made unto the party of the second part at the plant of the first party) such quantity of its products as the second party may require for his route at a price

equal to 20% less than the prevailing wholesale price for such product; payment for such merchandise taken by the party of the second part shall be made each evening for the products used or sold that day; the commissions earned by the party of the second part on his sales, or the difference between the price for which he sold the products and the price for which they were delivered to him, shall be paid by the party of the first part to the party of the second part on Wednesday of each week for the preceding calendar week;''

It was the custom of the parties, however, to deduct the plaintiff's commission, or difference in the price he paid for the products from that which he sold, each evening. On the date of the contract, the only products which defendant was producing for sale in plaintiff's territory were potato chips sold under the name of ''Blue Bell Chips''. Plaintiff continued in defendant's employ, selling Blue Bell Chips, for which he received the agreed commission of 20 per cent of the wholesale price, until May 23, 1932. At that time, because of price cuts by competitors, defendant began to produce potato chips which it sold under the name of ''Gold Seal Chips''. Defendant refused to pay plaintiff the 20 per cent commission on the Gold Seal Chips, but continued to manufacture and furnish plaintiff for sale, which he continued to sell, the Blue Bell Chips, for which he received the full 20 per cent of the wholesale price, together with the Gold Seal Chips, but defendant compelled plaintiff to accept a commission amounting to about 10 per cent of the wholesale price on the Gold Seal Chips, thus cutting plaintiff's compensation about in half, for the distribution of defendant's product. Plaintiff was able to sell only a few of the Blue Bell Chips, as the price of the Gold Seal Chips was considerably less. Plaintiff continued in defendant's employ for about 19 days and then withdrew from that employ-

ment because he was not able to make his expenses on a commission reduced from 20 to 10 per cent.

The contract provided that it might be cancelled upon 60 days notice in writing by either party, or cancelled by defendant upon plaintiff's failure to properly work his route. It will be noticed from the portion of the contract quoted that defendant was not limited to manufacturing and furnishing plaintiff a certain kind of product to sell. The contract does provide, however, that defendant should sell to plaintiff such quantities of its products as plaintiff might require for his route, at a price equal to 20 per cent less than the prevailing wholesale price for such product.

The contract provided that, on the termination thereof, plaintiff should surrender up to defendant the full and complete list of all patrons or customers of the route, and that he would not, at any time within one year after the termination of the contract, aid or assist any one in any business in competition with defendant, or engage in any way in a business in competition with defendant in the sale of potato chips.

Defendant pleads and claims, in substance, that about the first of May, on account of competition, plaintiff complained to defendant that such competition was ruinous and that he was unable to compete against the same, and that plaintiff agreed to accept a commission of about 10 per cent, or ten cents per dozen of six-ounce bags, instead of 20 per cent commission, in order to meet competition.

Since, by the terms of the contract, it was not to be performed within one year, the plaintiff contends that it was within the statute of frauds and could not be modified by an oral agreement. With this contention we are not in accord. The statute of frauds does not

apply to any agreement not to engage in a certain business, although the time specified is for a period longer than one year: *Southwell v. Beezley,* 5 Or. 458; 27 C. J. 185, § 108. A written contract may be changed verbally at the pleasure of the parties to the agreement: *Pippy v. Winslow,* 62 Or. 219 (125 P. 298); *City Messenger Co. v. Postal Telegraph Co.,* 74 Or. 433 (145 P. 657); *Wakefield v. Supple,* 82 Or. 595 (160 P. 376). We think that the contract might be changed as to the commission by an oral agreement without disturbing in any way that part of the contract relating to plaintiff's engaging in the same kind of business.

Plaintiff testified, in effect, that when the change was made and they commenced to sell the Gold Seal Chips, there was nothing said between defendant and himself in regard to the commission until he sold the Gold Seal Chips which he had taken out, and then defendant just naturally took out 10 per cent; that he never consented to accept 10 per cent, or ten cents a dozen, and that, as it was his custom, he turned in all the money he received for the potato chips and they left him only 10 per cent. On the other hand, the substance of defendant's testimony is that the plaintiff did not protest or complain on account of the reduction of the commission, but practically consented to such change. As we read the testimony, there is a direct conflict upon this question. Plaintiff testified that when he complained of the reduction the defendant, or its officers, encouraged him to continue, indicating that the price-cut or competition would soon terminate.

The testimony tended to show that after plaintiff ceased selling potato chips for defendant he was unemployed for a period of one month and then found

other employment, at which he was unable to earn as much. Plaintiff alleges that he could have earned, during the five months following defendant's breach of the contract, the sum of $2,000, or an average of $400 per month, and that his expenses would have been about $75 per month. The evidence tended to show that the potato chip business was at its height during the summer months.

■■ Where the testimony is in conflict, or where reasonable minds might draw different conclusions therefrom, the question of fact should be submitted to the jury: *Sheard v. Oregon Elec. Ry. Co.,* 131 Or. 415 (282 P. 542). Generally in actions involving the statute of frauds, questions of law are for the determination of the court, and questions of fact or of mixed law and fact are for the determination of the jury under proper instructions from the court: 27 C. J. 389, § 490.

■ Defendant contends that by reason of the plaintiff having proceeded to sell potato chips from May 23 to about June 11, and having received a reduced commission of 10 per cent, the plaintiff is precluded from denying that the contract was modified. Citing *Rogers v. Maloney,* 85 Or. 61 (165 P. 357) ; *Neppach v. Or. & Cal. R. R. Co.,* 46 Or. 374 (80 P. 482, 7 Ann. Cas. 1035). In *Rogers v. Maloney,* supra, it was held, in substance, as shown by the syllabus, that where a lease by an Indian allottee provided that it should not become effective until approved, evidence that the lessee advanced the lessor money, furnished supplies and did some work on the property, all in reliance upon the lease, makes the lessor's waiver of the condition regarding approval a jury question. In the present case the question was not submitted to the jury. In the Neppach case it was held that the appointment or authority of an agent is

a question of fact for the jury, but what the agent may do by virtue thereof is a question of law. We fail to see how the defendant was misled or caused to do any act to his prejudice by reason of the conduct of plaintiff in continuing to work for the reduced compensation.

 Defendant contends that the court was justified in directing the verdict for the defendant for the reason that the damages claimed were too speculative and uncertain. The rule that damages, which are uncertain or contingent, cannot be recovered, does not apply to an uncertainty as to the amount of the benefit or gain to be derived from the performance of a contract, but to the uncertainty or contingency as to whether there would be any such gain or benefit derived at all: *Blagen v. Thompson,* 23 Or. 239, 240 (31 P. 647, 18 L. R. A. 315); *Bredemeier v. Pacific Supply Co.,* 64 Or. 576, 580 (131 P. 312); *Martin v. Neer,* 126 Or. 345 (269 P. 342). In the present case the evidence indicates that the damages claimed by plaintiff as to the profits or commission are such as may reasonably be supposed to have been within the contemplation of the parties to the contract, at the time of the execution thereof, and the proximate and natural consequences of the breach by defendant. This is indicated from the nature of the contract itself. A person violating his contract ought not to be permitted to entirely escape liability for the reason that the amount of damages which he has caused is uncertain. Losses sustained and gains prevented are proper elements of damages. As they are prospective, they must to some extent be uncertain and problematical. It is proper that they should be determined by the jury, from the nature of the contract, the circumstances surrounding and following its breach and the consequences naturally and plainly traceable

to such breach under proper instructions of the court: *Bredemeier v. Pacific Supply Co.*, supra.

We think there was error in directing a verdict for defendant and that the cause should have been submitted to a jury for determination.

It follows that the judgment of the circuit court must be reversed and the cause remanded for a new trial. It is so ordered.

BELT, J., not sitting.