69 So.2d 858

SUMMERS v. RALSTON PURINA CO.

6 Div. 172.

Supreme Court of Alabama.

Jan. 14, 1954.

Jos. S. Mead, Birmingham, for appellant.

White, Bradley, Arant, All & Rose and E. Grant Fitts, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

The appeal is by the plaintiff in the court below from an order and judgment of the court granting defendant's motion for a new trial and setting aside a verdict and judgment for the plaintiff.

The action was brought by W. D. Summers against the Ralston Purina Company, a corporation, for the recovery of money allegedly due Summers by virtue of an alleged agreement between the two parties. The jury returned a verdict in favor of plaintiff and judgment was rendered thereon in the sum of $2,164.85, plus interest of $454.60, making a total of $2,619.45.

The only question for review here is the propriety of the trial court's action in setting aside the verdict of the jury and the judgment rendered thereon.

The complaint consisted of two counts. Count One is for money due on open account, and Count Two is for work and labor done. The complaint states that both counts are based upon the same transaction. Defendant pled, in short, by consent, the general issue, with leave, etc.

Defendant's motion for a new trial contained some 59 grounds therefor. The order granting defendant's motion for a new trial was general, but stated specifically that it was not based on 9 specified grounds. We will, therefore, not consider these specific grounds. But the rule is, of course, that if any one other ground was due to be sustained, the trial court was not in error granting defendant's motion to set aside the judgment.

The evidence shows that during October, 1944, appellant and appellee executed an employment agreement, the appellant to work for appellee as a salesman. By the terms of said agreement, territory assigned to appellant consisted of Monroe, Conecuh and Escambia Counties, in Alabama, as

well as Santa Rosa and Escambia Counties in Florida. The whole of the five counties form a contiguous territory. In the fall of 1944, appellee had in its employ three other salesmen whose territory adjoined or was near that of appellant. These other salesmen were W. E. Sherrel, H. M. Nonnemacher and R. L. Carter, Jr.

In December, 1944, or early January, 1945, it became apparent that W. E. Sherrel was about to be drafted. He made arrangements to accept temporary employment with a war industry. As a consequence, J. C. Cardinal, Jr., Southeastern Sales Manager of appellee, undertook to arrange to have Sherrel's territory worked during Sherrel's temporary absence by the other salesmen mentioned. We state here that Cardinal's authority to bind appellee in the premises is not questioned.

There is conflict in the testimony with respect to the arrangements which were made for taking care of Sherrel's territory during his impending absence. Appellee's testimony tended to show that there was a conference between Cardinal, Summers and Nonnemacher in Mobile, Alabama, just prior to February 1, 1945, during which Cardinal informed Summers and Nonnemacher of Sherrel's expected temporary absence, and requested them to cooperate in handling the situation precipitated by the circumstances. Further, appellee's testimony tended to show that Cardinal proposed an arrangement to Summers and Nonnemacher, to which they agreed, whereby Nonnemacher would take over temporarily the three Alabama counties of Summers', and Summers, in turn, would take over all the counties in Sherrel's territory except the three farthest to the east, which would be taken over by Carter.

Appellant's testimony was to the effect that he thought he would get a bonus on the territory belonging to Sherrel and temporarily worked by appellant. Bonuses were generally earned by each salesman of appellee, under their respective contract, on all products sold over a minimum amount, as computed in conjunction with the salesman's expenses, upon a sliding scale point system.

Under date of February 1, 1945, Cardinal issued to Summers, Nonnemacher and Carter a bulletin, which, in part, referred to the Sherrel territory, as follows:

"Temporarily, we will leave his district as an open district."

The bulletin provided that Carter would temporarily work three counties of Sherrel's territory; that Summers would work all the remaining counties of Sherrel's territory in Alabama and Florida, and that Nonnemacher would temporarily work the three Alabama counties of Summers' territory. Further, said bulletin provided:

"There is to be *no change in the present sales contracts* of Nonnemacher, Carter or Summers." (Emphasis added.)

Appellee contended that the bulletin, taken in connection with the alleged conversation between Cardinal, Nonnemacher and Summers clearly showed that there was to be no bonus paid on the Sherrel territory, while temporarily being worked by the other salesmen.

Appellant testified that during the first week of February, 1945, he visited Sherrel in order to gain information concerning the Sherrel territory, and also in order to find out whether he (appellant) would be rewarded with a bonus on sales within that territory. The evidence shows that Sherrel could give Summers no definite answer. This conversation evidently occurred after February 1, 1945, the date of the bulletin issued by Cardinal, but before said bulletin was received by Summers at his home in Atmore, Alabama.

Appellant also testified that shortly thereafter, he went to a sales meeting which was held in Jackson, Mississippi. Said meeting was held on the 8th and 9th of February, 1945. According to Summers' own testimony, Cardinal, while in Jackson, definitely told him that the Ralston Company had no intention of paying Summers any bonus whatsoever for working in Sherrel's territory. Furthermore, appellant admitted that the effect of Cardinal's statements was that Summers could

"either take it or leave it." In other words, on either February 8th or February 9, 1945, the Ralston Company's representative told appellant, in no uncertain terms, that no bonus of any amount would be paid in relation to the disputed territory.

Any possible doubt which Summers might theretofore have had should have certainly been eradicated by Cardinal's unambiguous statement. Subsequently, the appellee continued to pay appellant a bonus only upon his old territory. Summers received a statement with the checks showing that the payments were applicable only to said territory.

Three principal issues are presented for our determination. First: Was the original employment agreement between appellant and appellee one terminable at will? Secondly: Did the bulletin of February 1, 1945, issued by the Ralston Company amount, in legal effect, to a promise to pay Summers a bonus on Sherrel's territory? And finally: What was the effect of the conversations between Cardinal and appellant in Jackson, Mississippi, during February, 1945?

■■■ I. The terms of the written agreement read, in part, as follows:

"Such employment to begin October 1, 1944 and end with termination of this agreement for any reason * * * the salary to be paid the Salesman shall be at the rate of $200.00 per month, payable monthly."

The pertinent provision of the contract in Peacock v. Virginia-Carolina Chemical Co., 221 Ala. 680, 130 So. 411, was:

" 'Salary to be at the rate of $2000.00 per annum, payable monthly, beginning October 1, 1926.' "

This court held such phraseology merely fixed the compensation, not the duration of employment, and that said contract was properly terminated at the will of the employer. An indefinite hiring is presumed to be at the will of either party, in the absence of custom or facts showing a contrary intention. The mere fact that the Ralston Company each year effected a new

written agreement with appellant is not, alone, sufficient to show any such contrary intention. No terms of the contract state that it was meant to endure for a definite period; thus, we choose to follow the general rule that contracts for services which do not specify as to duration are construed to be terminable at will. Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699; Title Ins. Co. of Richmond, Inc. v. Howell, 158 Va. 713, 164 S.E. 387; Peacock v. Virginia-Carolina Chemical Co., supra; Island Lake Oil Co. v. Hewitt, Tex.Civ.App., 244 S.W. 193; Stonega Coke & Coal Co. v. Louisville & N. R. Co., 106 Va. 223, 55 S.E. 551, 9 L.R.A.,N.S., 1184; Greer v. Arlington Mills Mfg. Co., 1 Pennewill 581, 43 A. 609; Lambie v. Sloss Iron & Steel Co., 118 Ala. 427, 24 So. 108; Howard v. East Tenn., Va. & G. R. Co., 91 Ala. 268, 8 So. 868; Coffin v. Landis, 46 Pa. 426.

II. We must next determine whether the bulletin of February 1, 1945 amounted, in legal effect, to a promise to pay appellant a bonus on the territory in controversy. As previously stated, in said bulletin, the following is stated:

"There is to be no change in the present sales contracts of Nonnemacher, Carter or Summers."

Upon examination of the original employment agreement, we find:

"3. That it is mutually agreed between the parties to this agreement that in event of any change of territory, after the execution of this agreement, such change shall not affect the other terms of this agreement, unless mutually agreed upon when such change is made."

Also, said agreement states:

"12a. In addition to the Salary and expense allowance provided herein, the Company agrees to pay a monthly bonus for shipments of Chows, Sanitation Products and Farm Supplies made while the Salesman remains actively in charge of his territory, as follows".

■■■ We think it clear, therefore, that appellee's bulletin of February 1, 1945 did

amount to a promise to pay Summers a bonus on the Sherrel territory. Any other determination would completely ignore the provisions of the two instruments. Inasmuch as the bulletin of February 1st concluded with the statement that there would be no change in the present sales contracts of Nonnemacher, Carter or Summers, little, if any, import can be given the sentence which refers to the Sherrel territory as an "open district." In the construction of all written instruments, the purpose is to ascertain and give effect to the intention of the parties. To ascertain such intention, regard must be given not only to the nature of the instrument, but also to the condition of the parties, and the objects they had in view. Evington v. Smith Brothers, 66 Ala. 398.

III. The final and most important question concerns the effect of certain conversations between Cardinal and Summers in Jackson, Mississippi, during February, 1945, the content of which is undisputed. There, Summers spoke with Cardinal about the bonus in question, and asked him whether he (Summers) was going to receive any such bonus for working the Sherrel territory. According to appellant's own uncontradicted testimony, Cardinal answered that the Ralston Company had no intention of paying any bonus upon the Sherrel territory during Sherrel's temporary absence. We think it clear enough that after that conversation, appellant knew the exact attitude of appellee concerning a bonus on the disputed territory.

Thus, even though appellee's bulletin of February 1, 1945 amounted to a promise to pay Summers a bonus on Sherrel's territory, that agreement was terminated by Cardinal at the Jackson meeting when Cardinal told Summers that the Ralston Company was not going to pay Summers a bonus on said territory. In legal effect, the prior agreement to pay appellant a bonus on the Sherrel territory was eradicated, and an offer was made on the part of appellee to give Summers employment thereafter on the basis outlined by Cardinal. Summers, by continuing to work, accepted Cardinal's offer. From that date forward,

a new and different contract, terminable at will, existed. Obligations under the prior agreement, also terminable at will, had been extinguished.

Our conclusion is supported by the great weight of authorities touching upon this point. American Mutual Liability Insurance Co. v. McDiarmid, 211 Ala. 127, 99 So. 849, holds that the law will not imply a promise against the expressed declaration of the party to be charged, made at the time of the supposed undertaking. The reason for said rule is that all contracts must be based on the mutual agreement of the parties. In this case, appellee definitely refused to pay a bonus on the disputed territory. Appellant argues that he dissented to any change in the terms of the original agreement. Appellant's argument, however, is unavailing. If he did not like the terms imposed by the employer, he had the election to quit or not to quit. He could either accept the terms imposed or resign. Appellant certainly could not continue to work, and over the express dissent of the employer hold said employer for something for which he had said he would not be liable. It is no answer to say that the employer could have discharged the employee. If anyone had to take any action toward severing the relationship, appellant, the employee, was under the necessity of taking that step. Such is clearly the holding of Meaher v. Pomeroy, 49 Ala. 146, and Hodges v. Sublett, 91 Ala. 588, 8 So. 800. The only reasonable conclusion fairly to be drawn from the fact that Summers continued to work is that reluctantly he decided it was better to "take it" than to "leave it."

The case of L. G. Balfour Co. v. Brown, Tex.Civ.App., 110 S.W.2d 104, 107, is in point. There, a salesman was employed on a commission basis under a contract which provided for termination on thirty days' notice. The employer issued a bulletin informing its salesmen that on and after a certain date in the future the commission would be lowered in certain respects. The salesman protested against the change made by the company, but continued to

work. The Texas court, in dealing with this situation, stated the following:

"When appellant made this change in appellee's compensation at variance with the contract, *he* [employee] *was called upon to elect* whether he would accept the modified contract or rely upon the old and sue for its breach. He could not continue his services under the new or modified contract and later rely upon the terms of the old; *his election* must have been made within a reasonable time after the condition arose. Appellee continued in appellant's services with full knowledge of the new schedule of commissions and bonuses provided for in the letter of August 22, 1934; but of course *this continued service was not without protest;* however, *an earnest protest was not sufficient,* he was called upon to act; this he did by continuing in the service." (Emphasis added.)

Also, the court's opinion stated:

"Appellee testified that, after receipt by him of the letter of August 22, 1934, from appellant, his net commissions were figured on the basis of that letter; that he continued to work for appellant thereafter until in June, 1935, when he resigned. *We think this shows an election on the part of appellee to ratify, though reluctantly, the modified or changed contract as embraced in appellant's letter."* (Emphasis added.)

L. G. Balfour Co. v. Brown, supra, also is authority for the proposition that an employer's declaration of intention to modify a contract terminable at will, constitutes, in effect, a declaration of his option to terminate.

Inasmuch as any employer can terminate a contract at will at any time and get rid of the employee entirely, quite often it is stated that there is embraced within such power the right of the employer to modify the contract as a condition of continued employment. Strictly speaking, however, a modification at the insistence of one party does not occur; instead, the birth of a new and different contract arises, upon the termination of its predecessor. In this respect, we prefer the language of Curtiss Candy Co. v. Silberman, 6 Cir., 45 F.2d 451, and White Sewing Machine Co. v. Shaddock, 79 Ark. 220, 95 S.W. 143, to that of Hauser v. Watson, D.C.Mun.App., 60 A.2d 698, Swalley v. Addressograph Multigraph Corp., 7 Cir., 158 F.2d 51, Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923, and Robinson v. Phillips Petroleum Co., 175 Okl. 640, 54 P.2d 322, though all of these cases fully support the conclusion of this court.

Smith Baking Co. v. Behrens, 125 Neb. 718, 251 N.W. 826, exhibits, in the opinion of this court, an extremely questionable holding. Even so, however, we do not agree that it supports appellant. There, the manner in which the suit was brought, as well as the relief asked, was entirely different from that of the case at bar.

Donnellan v. Halsey, 114 N.J.L. 175, 176 A. 176, certainly does not support appellant; instead, it lends weight to the contentions of the appellee.

Krause v. Bell Potato Chip Co., 149 Or. 388, 39 P.2d 363, also cited by appellant, is not in point. There, the contract was not terminable at will, but rather was one which could be cancelled only upon written notice of sixty days. Also, it appears that the employer undertook to lull the employee into believing that the reduction, at most, was only temporary. Thus, its holding cannot possibly have any bearing upon the determination of this case.

Again, in Atkinson v. New Britain Machinery Co., 7 Cir., 154 F.2d 895, no support is found for appellant's contention. There, as the court stated, the contract on its face appeared to be terminable on a month-to-month basis. However, because of numerous other reasons clearly set forth by the court, the contract was correctly held to be a term contract, from year to year. As such, of course it could not be modified by one party without the consent of the other. Also, and of primary importance from our viewpoint, that case turned upon a question of fact as to exact-

ly what took place. In the case now before us, no such question of fact is present, unless appellant's own testimony is disbelieved. Thus, it should be manifest that the holding of Atkinson v. New Britain Machinery Co., supra, dealt with an entirely different problem.

Evans v. Henson, 73 Ga.App. 494, 37 S.E.2d 164, is not in point. It merely concerns the sufficiency of the evidence to support the verdict.

We have fully considered all contentions of both parties. Having done so, we conclude that defendant's requested charge 40 should have been given by the trial court. In so holding, we rely upon appellant's own undisputed testimony.

Thus, the action of the trial court in granting a motion for new trial must be upheld.

Affirmed.

SIMPSON, GOODWYN and CLAYTON, JJ., concur.