This appeal is from a judgment of $6,948.57 plus $388.99 interest rendered against Task Consultants, Inc., the appellant here and defendant below, pursuant to a contract of employment, and from an order overruling a motion for new trial. We must decide whether the trial court erroneously construed the employment contract in granting recovery.
The facts show that plaintiff-appellee, James J. Finerty, on August 18, 1972 entered into an agreement with J. Thomas Swinea, who at that time was doing business as J. Thomas Swinea and Associates, to *Page 88 
be employed at a salary of $23,000 annually plus travel expenses. Upon incorporation of the firm, Finerty was to be a twenty-five percent shareholder in the corporate ownership.
On March 1, 1973 J. Thomas Swinea and Associates incorporated as Task Consultants, Inc., and Finerty was elected a vice-president and given a twenty-five percent share in the ownership of the corporation. There were no other changes in the conditions of employment established in 1972. Finerty continued to perform the same functions for the corporation as had been performed for the original firm and to receive the same salary and travel reimbursement as before.
During the latter part of 1973 the financial condition of Task deteriorated to the point where Finerty and Swinea, who was the president of Task, orally agreed to defer their salaries and travel reimbursement until the cash flow into Task improved. As a result of this agreement, Finerty did not receive salary for the months of November and December of 1973 and January 1974 nor did he receive travel reimbursements for the period September 1973 through January 1974.
In February 1974 Finerty's status with Task changed from one of officer of the corporation, i.e. vice-president, to one of employee. Finerty received a letter from Task dated February 14, 1974 and signed by Swinea explaining the new relationship between Finerty and Task and accompanied by a written employment contract dated February 1, 1974 to be signed by Finerty. Finerty signed the contract and worked as an employee of Task until August 30, 1974 when he terminated his employment.
The February 14, 1974 letter in pertinent part is as follows:
"Dear Mr. Finerty:
 "This will confirm our conversation and agreement of February 7, 1974, regarding the status of your employment and compensation with Task Consultants, Inc.
. . . .
 "As we further agreed, Task Consultants will, at the earliest date it is financially capable, reimburse you for the expenses of travel which you have personally incurred and documented but, as of this date, have not received payment.
. . . .
 As we agreed, the determination as to whether Task is financially capable to reimburse you for salary and travel expenses not paid will depend solely upon the income to the firm which your activities during the past 5 months or the next 11 months will generate.
 "An employment agreement setting out, in full, the conditions of your employment is attached for your signature."
Finerty claims $5,749.98 as unpaid salary for the months of November and December 1973 and January 1974 plus unreimbursed expenses of $1,198.59 for the period September 1973 through January 1974.
Task concedes that the cover letter dated February 14, 1974 reflects an obligation to Finerty with regard to past compensation and that Task agreed to pay its obligation upon the occurrence of certain conditions. Task maintains, however, that this prior obligation was extinguished by Section 8 of the February 1, 1974 employment contract. By signing the contract Finerty agreed to forego any unpaid claims for compensation at the time of his termination of employment. Section 8 is as follows:
 "This contract, and the association created hereby, may be terminated by either party at any time on written notice given to the other at least 30 days prior to the effective date of such termination. Employee shall divest any and all rights to compensation which accrued prior to termination of this contract."
Task says that the trial court, in awarding a judgment to Finerty for the amounts he claimed were due him, erroneously applied the law to the facts. It says that words used in contracts are to be given their natural and usual import. CanalInsurance Co. v. Stidham, 281 Ala. 493, 205 So.2d 516 (1968). Stressing the words "divest," "accrued" and "prior" as used in the last sentence of Section 8, supra, Task argues that Finerty gave up his right to all *Page 89 
compensation from Task which accrued prior to or subsequent to the February 1, 1974 agreement.
Finerty answers by saying that the cover letter is either part of the February 1, 1974 contract or a separate agreement, upon either of which he is entitled to recover, and urges that, in construing the contract, we give due regard to the interest of the parties and the conditions existing at the time of the agreement as well as considering the nature of the instrument itself. He cites in support thereof the case of Summers v.Ralston Purina Co., 260 Ala. 166, 69 So.2d 858 (1954).
As we conceive it, the issues presented to and decided by the trial court were (1) whether the cover letter of February 14, 1974 and contract dated February 1, 1974 were so connected as to form the complete agreement of the parties, and (2) if so, whether the letter either controls over Section 8 or contradicts Section 8 so that the trial court was free to interpret the contract and ascertain whether the parties intended Finerty's right to the deferred salary and expenses to be divested upon the termination of his employment.
The controlling general principle of law is that two writings connected by reference one to the other, or made with respect to the same subject matter and proved to be parts of an entire transaction, constitute but a single contract as if embodied in one instrument. Moorer v. Tensaw Land Timber Co., 246 Ala. 223, 20 So.2d 105 (1944) and cases there cited.
The supreme court in Weeden v. Asbury, 223 Ala. 687,138 So. 267 (1931) said:
 "It is familiar law that in the absence of anything to indicate a contrary intention, writings executed at the same time by the same parties for the same purpose, and in the course of the same transaction, are in the eye of the law one instrument, and will be received and construed together as constituting one contract and evidencing the intention of the parties."
The first paragraph of the February 14, 1974 letter from Task to Finerty states:
 "This will confirm our conversation and agreement of February 7, 1974, regarding the status of your employment and compensation with Task Consultants, Inc."
That language certainly suggests that an agreement was made by the parties on February 7, 1974 rather than when Finerty signed the employment contract. Finerty's testimony was to that effect.
Past dealings between the parties also suggest that their agreement was reached prior to Finerty's receiving the confirming letter and signing the contract. When Finerty was first employed by the predecessor of Task, J. Thomas Swinea 
Associates, an informal agreement was made which later was confirmed in a letter.
We construe the February 14, 1974 letter, as we believe the trial court did, to state that there was an agreement for employment beginning on the contract date and that the deferred compensation and expenses, which had accrued prior to the new employment date, would be paid provided certain conditions were met by Finerty. These conditions were then spelled out in the letter. There is evidence in the record to support a conclusion that the conditions were met.
Having decided that the letter and the employment contract together formed the complete agreement of the parties, the trial court was faced with the apparent contradiction between Section 8 of the employment contract, providing that all rights to prior accrued compensation and expenses shall be divested upon termination of employment, and the promise of Task, as set out in the letter, to pay specific prior accrued compensation and expenses. The trial court, in construing the language of Section 8 as it applied to specific promise to pay specific accrued compensation and expenses, could have reasonably interpreted the language of Section 8 to apply solely to compensation accruing after the commencement of the new agreement, which would have been after February 1, 1974. The sentence just preceding the divestiture sentence states: "This
contract, and the association *Page 90 
created hereby, . . . can be cancelled upon proper notice." A not unreasonable interpretation would be that, in the absence of specification, the contract of February 1, 1974 only applied to occurrences after the contract date and had reference to compensation that might accrue after February 1, 1974.
Assuming, however, that the trial court did consider that the language of Section 8 was contradictory of the language in the letter, we do not think the trial court erred. The determination of whether or not a contract is ambiguous is the function of the court. If the court concludes that the contract is ambiguous, then it is for the jury to determine the true meaning of the contract. C.F. Halstead Contractor, Inc. v.Dirt, Inc., 294 Ala. 644, 320 So.2d 657 (1975). Here, since the court heard the case without a jury, the rule of ore tenus applies.
We are convinced that the evidence fully supports a conclusion that the trial court decided that the employment contract including Section 8 applied only to compensation accruing after February 1, 1974, and did not cut off Finerty's right to receive the compensation and expenses that had admittedly accrued prior to February 1, 1974.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.