**L. G. BALFOUR CO. v. BROWN.**

No. 13608.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 29, 1937.

Mann, Irion & Mann, Gerald C. Mann, and M. R. Irion, all of Dallas, for appellant.

McGown & McGown, John M. Scott Jr., and B. E. Godfrey, all of Fort Worth, for appellee.

SPEER, Justice.

L. G. Balfour Company, a corporation, instituted this suit in the Sixty-Seventh district court of Tarrant county, Tex., against A. H. Brown, a former employee, and Stella M. Brown as a surety on his fidelity bond, for conversion by A. H. Brown of college, school, fraternity, and commercial jewelry and other merchandise delivered to A. H. Brown for purposes of sale and to be used as samples while in the discharge of his duties under his employment. The plaintiff also sought to recover certain furniture, or, in case it could not be found, its value, furnished to Brown with which to equip an office, the better to enable him to represent it. Recovery was also sought for a deficit alleged to be due plaintiff by Brown growing out of former accountings between the parties.

The company failed to recover and has appealed. The plaintiff below is appellant here, and, since the surety is only interested as such, for convenience we shall refer to A. H. Brown as appellee.

Appellant based its cause of action on two written contracts, with supplements and addenda to each, the one dated March 10, 1932, covering the intervening time between that date and June 1, 1933; the other dated June 1, 1933, and extending to June 1, 1934; that the last contract provided, among other things, as follows: "And so from year to year covering the same months unless otherwise terminated as hereinafter provided."

Allegation was made that the last contract provided that it could be terminated at the option of the company for any breach of its terms by appellee and further that it could be terminated by either party for any cause by giving written notice to the other party for thirty days of such an intention.

Briefly stated, it was alleged that under these contracts appellant employed appellee to sell college and school jewelry, programs, and other articles on a commission basis; the petition contained copies of the contracts showing the commissions and bonuses promised in consideration of services performed; and it is upon a construction of these contracts and commissions promised and the right of termination of the contracts that precipitated this litigation.

It appears that the whole controversy arose after June 1, 1934, and while the parties were operating under the agreement that the contract should continue to be effective during the same period each year until terminated in one of the ways provided for therein.

Appellant asked for judgment for $516.50 and for general relief.

Appellee answered with a general denial, and in cross-action against appellant under the contract and its extension. He specially pleaded that he was not indebted to appellant in any sum and that he had not converted the office furniture but that he claimed title thereto; that appellant was indebted to him for accrued commissions on sales shown in his pleadings in cross-action; the items set out aggregate approximately $1,487.42; he pleaded, in the alternative, that, if it should be determined that he did not own the furniture in question but that it belonged to appellant, he had incurred an item of expense in its preservation since he ceased to use it in connection with his employment with appellant, amounting to $72; that the first amount shown, together with the latter item of $72, amounted to a total indebtedness due him from appellant in the sum of $1,559.42, for which he prayed judgment.

The pleadings are lengthy, those of appellant contained the several contracts and subsequent agreements, and each contain a mass of items, such as statements of merchandise billed, accounting of collections and remittances, credits, debits, and various calculations of percentages and commissions; the statement of facts covers 470 pages, to which is attached fifty or more exhibits made up of groups of photostatic copies of statements, billings, calculations, and correspondence.

The case was tried to the court without a jury. Judgment was entered against appellant on its alleged action for debt, and in favor of appellee, A. H. Brown, on his cross-action for $732.13. The judgment also shows that the amount was arrived at by a finding that the claims of all parties grew out of the contracts sued on by appellant, and that appellee was indebted to appellant in the sum of $274.90, and that appellant was indebted to Brown in the sum of $1,007.03; deducting the former from the latter gave the amount for which judgment was rendered. The judgment further recited that, Stella M. Brown being a surety only for A. H. Brown, and there being no sum owing by A. H. Brown to appellant, there was no liability upon the part of the surety and she is discharged with her costs.

At the request of appellant, the trial court filed findings of facts and conclusions of law, apparently covering every controverted issue in the case; there are thirty-one of these findings of fact and eight "conclusions of law." Many of the fact findings of the court are attacked by appellant as being without support either in the pleadings or testimony. These attacks are embraced within fifteen assignments of error and discussed in the brief under five propositions.

The first proposition is said to be germane to assignments of error Nos. 1, 6, 7, 8, 13, and 15. The determination of this proposition is largely the controlling issue in the controversy. The substance of the proposition is that the parties operated under a written contract until August 22, 1934, which provided that appellee should receive for his services commissions on his own sales, and in addition thereto a special bonus of 10 per cent. on the net prices and also a bonus of 10 per cent. of the net prices on salesmen working under his supervision, and that the contract also provided that such conditions existed so long as the employee's services were satisfactory to the company; but that on August 22, 1934, the appellant advised appellee, in writing, the bonus thereafter, under said contract, would be reduced to 5 per cent. on subsalesmen's sales and 2 per cent. on appellee's own sales; in the same letter agreeing to wipe out a deficit for which appellee was responsible; that appellee protested the change made by appellant in the contract, but, having reached no mutual agreement about the matter, the appellee continued to work for appellant until in June, 1935, when he resigned, receiving compensation as provided in appellant's letter of August 22, 1934; therefore he was not entitled to claim, when sued, settlement under the written provisions of the contract, but is bound by the change made by appellant in its letter of date August 22, 1934.

A stipulation in the contract reads: "This contract may be determined at any time at the option of the company upon a breach of any of the conditions of this contract and may be terminated at any time during said term by either party, for any other reason, upon thirty days notice in writing of the intention to so do first being given to the other party, or by mutual consent in writing of the parties hereto. * * *"

The contracts, the agreements of ratification, and the addenda to each perhaps conveyed to the interested parties the nature of appellee's employment, his duties and compensation to be received until in August, 1934, when the appellant claims to have effectively terminated the original contract and made a different one with appellee as respecting compensation.

■ Upon the soundness of this contention depends whether or not the trial court rendered a proper judgment in the case. We believe the court reached an improper legal conclusion when he found at paragraph 7: "Inasmuch as the preponderance of the credible testimony showed that A. H. Brown did not agree to a modification of any of the contracts existing between himself and plaintiff, I conclude said contracts were not modified in any respect."

The original contracts could be terminated by either party in the manner therein set out; and, while appellant did not, in so many words, declare its intention to terminate the contract and give the thirty days' written notice to appellee, yet its letter of August 22, 1934, had that effect; at least it was a declaration amounting to a breach of the terms of the contract in the matter of compensation to appellee. The portions of that letter which we think applicable to the principle announced are as follows:

"To District Managers:

"Subject: Basis of compensation. The District Manager Bonus must be entirely divorced from any idea of payment as a commission. This bonus is an administrative expense for management and logically should be based on the production of subsalesmen. * * * On the basis of the above, we have worked out the following schedule for district managers: 5% on sub-salesman sales, this bonus is not paid on the manager's own sales. The district manager will be paid a bonus on his own sales on the following basis: 2nd Season, 1%; 5th Season 2%; 1% addition for each 5th year. * * *"

It is certain appellee protested against the change made by appellant in compensation to be paid under the contract; under date of September 4, 1934, he wrote appellant in this language: "I have been unable to understand why there should not be a 5% bonus on the sales made by the District manager himself. According to the scale you set up, my sales will only carry a 2% bonus for office. Is there not some way you can figure the same 5% on all sales from this office?"

■ In so far as the record shows, the dispute about the proposed change in com-

pensation ended there. A reply by appellant to appellee's letter is shown in the statement of facts, but it was inserted for purposes of a bill of exception which was not brought forward in this appeal; the letter has no place in appellant's brief, and we therefore have not considered its contents.

When appellant made this change in appellee's compensation at variance with the contract, he was called upon to elect whether he would accept the modified contract or rely upon the old and sue for its breach. He could not continue his services under the new or modified contract and later rely upon the terms of the old; his election must have been made within a reasonable time after the condition arose. Appellee continued in appellant's services with full knowledge of the new schedule of commissions and bonuses provided for in the letter of August 22, 1934; but of course this continued service was not without protest; however, an earnest protest was not sufficient, he was called upon to act; this he did by continuing in the service.

In the text of volume 10, Tex. Jurisprudence, p. 386, § 219, it is said: "Though the obligations of the contract are mutual and dependent, the failure of one party to perform does not put an end to the contract so as to make it void, but merely gives the other party the right to rescind or to waive the default and continue the contract in force. When the right to rescind for a breach exists, the innocent party is put to an election at the time of the breach as between rescission and affirmance. He must either rescind the contract as a whole or treat it as binding, and sue for damages, he cannot do both; nor as a rule, can he affirm the contract in part and rescind it in part, and he is bound by his election when once made. Acceptance of payments under a contract, or bringing suit for money due under it * * * is an election to affirm the contract."

The court found as a fact that appellee did not at any time consent to any modification of the compensation due him under the terms of the original contracts, and that the terms of said contracts in all respects continued in full force and effect until appellee resigned in June, 1935. It was upon this finding of facts that the court based his conclusions of law that the contracts remained in effect entitling appellee to the compensation provided in the original contracts. In this we think the court erred.

Appellee testified that, after receipt by him of the letter of August 22, 1934, from appellant, his net commissions were figured on the basis of that letter; that he continued to work for appellant thereafter until in June, 1935, when he resigned. We think this shows an election on the part of appellee to ratify, though reluctantly, the modified or changed contract as embraced in appellant's letter.

Whether or not a party to a contract which provides for an optional termination by either, upon notice to the other, may exercise that option by an expressed intention to so modify the contract as to change its effect, has not, so far as we have been able to find, been determined by our courts. Such a declaration by a party is clearly sufficient to support an action for a breach of the contract, and it occurs to us as being sufficient to constitute a declaration of that party's option to terminate it.

Other jurisdictions take this view of it. We find in 39 Corpus Juris, p. 48, § 19, this statement: "It is competent for the parties to a contract of employment to change or modify the same, and thus by new conditions add to or qualify its terms, provided a sufficient consideration moves between them. A contract of employment cannot be modified except by mutual consent, although a condition of employment imposed by a party in his interest, however, can be waived by him, and an employment terminable at any time is, however, subject to modification at any time by either party as a condition of its continuance, and may even be split up so as to allow a recovery for one part of a continuous service and disallow it for another part."

In White Sewing Machine Co. v. Shaddock, 79 Ark. 220, 95 S.W. 143, 144, the Supreme Court of Arkansas had before it the question involved here. In that case the company had made a contract with the agent to sell its machines in described territory upon a commission basis, and the contract provided that either party could terminate it by giving notice to the other of his intentions to do so.

The company wrote a letter to the agent withdrawing one of the counties originally assigned to him, and later wrote another letter withdrawing from the agent his exclusive right to sell machines in the territory. It was held these notices were in effect a dissolution of the old contract. The court said: "The verdict of the jury

assessing damages is not sustained by the evidence. Each of the parties to the contract reserved therein the privilege of dissolving it at any time upon notice to the other. Appellant's notice to appellee Shaddock, cutting out of the contract the territory in Ouachita County, was in effect a dissolution of the contract to that extent, though neither party had the right to alter the contract without the consent of the other. Appellee Shaddock, then, could have treated the contract as dissolved in toto by appellant, or could have accepted the proposed modification. He could not reject the proposed modification and at the same time continue the original contract in force against appellant's consent."

In the case of Robinson v. Phillips Petroleum Co., 175 Okl. 640, 54 P.2d 322, the Supreme Court of Oklahoma had under consideration a contract which could be terminated by the company at its option; the company had contracted to pay to Robinson a commission of 4 cents per gallon on gasoline and, while the parties were operating under that contract, the company wrote a letter and advised that it would no longer pay 4 cents per gallon but would only pay 2½ cents per gallon. Robinson protested against the reduction, but continued to operate and made periodical settlements with the company on that basis. It was there held that such a contract could be modified by either party as a condition to its continuation, citing Corpus Juris and the Shaddock Case, supra.

The judgment rendered in this case was based upon the theory that appellee, not having agreed to a modification of the contract, was entitled to recover commissions and bonuses based on the provisions of the original contracts, and for the reasons stated and under the authorities cited we think the court erred in these conclusions of law applicable under the facts.

Appellant's second proposition complains of the recovery by appellee on a 40 per cent. commission basis on sales made under the old contracts, when even under those contracts such a recovery was dependent upon the fact that appellant had not sooner "released" appellee; that his resignation in June, 1935, was not equivalent to a release by appellant. This proposition need not be further noticed, for the reason the case must be reversed upon the grounds hereinabove set out and the case must be retried, giving effect to our holdings here.

The third and fourth propositions complain of the judgment of the court awarding to appellee $72 for storage on the furniture belonging to appellant after demand had been made for its return and refused by appellee under a claim by him of ownership. The court declared the title of the furniture to be in appellant, and if upon another trial the same conclusion should be reached, then it would follow that appellee had no right to withhold it from appellant and could not be compensated for a wrongful act in doing so. The appellant would be entitled to a return of the property together with the reasonable value of its use during the time it was illegally withheld from it. 5 Tex.Jur. p. 1038, § 29.

The fifth proposition goes to the amount of recovery and set-off growing out of the contract as it was originally entered into and what the result would have been under the modified contract, and under our conclusions here for guidance by the trial court the same condition will not arise again and it is useless to consume time and space analyzing and discussing it here.

For the errors pointed out, the judgment of the trial court must be reversed and the cause remanded for another trial in conformity with this opinion.

Reversed and remanded.