**GENERAL MILLS, INC., Appellant,**

v.

**Gregg N. HATHAWAY and Billie Ann Hathaway, Appellees.**

**No. 05–84–00467–CV.**

Court of Appeals of Texas, Dallas.

March 28, 1985.

Rehearing Denied July 15, 1985.

Robert H. Mow, Jr., Michael Braden, Dallas, for appellant.

Daniel J. Sheehan, Jr., Dallas, for appellees.

Before STEPHENS, VANCE and DEVANY, JJ.

DEVANY, Justice.

This case involves an employment contract whereby General Mills, Inc., appellant, employed Gregg N. Hathaway, one of the appellees, as a commissioned salesman. A dispute arose between Hathaway and General Mills concerning what commission rate was to be used in calculating commissions on shipments of Izod merchandise starting on February 1, 1980. The trial court granted judgment for the Hathaways based on the findings of the jury. For the reasons below, we reverse and render judgment that the Hathaways take nothing.

General Mills and Hathaway had made an oral agreement that Hathaway would carry the Izod girls' line for a four-state region (Texas, Oklahoma, Louisiana, and Arkansas) and the Izod boys' line of cloth-

ing for Arkansas. Hathaway was hired by General Mills in 1978. Hathaway was called to the General Mills headquarters in New York in 1979 at which time he was assigned new rates. General Mills confirmed the new rates by letter, and Hathaway signed the letter acknowledging the new rates. Again, in January, 1980, Hathaway was called to New York and was assigned new rates for the following year. Hathaway did not like the new rates and testified that he made this known to Berkeley, the National Sales Manager for General Mills. He did not sign the follow-up letter confirming the rates. However, Hathaway continued to sell for General Mills. In April, 1980, Hathaway was terminated by General Mills and was paid according to rates assigned to him in January, 1980, and later confirmed in writing. Hathaway sued General Mills for an additional amount representing the difference between the 1979 and 1980 rates.

The issues submitted to the jury resulted in certain findings. Based upon those findings, the trial court entered judgment for $106,042.00, pre-judgment interest and attorney's fees, from which this appeal has been taken. General Mills presents ten points of error. We need only address the first three points of error, which are dispositive of this appeal.

In its first point of error, General Mills contends that the trial court erred in overruling its motions for judgment and new trial and entering judgment for the Hathaways because Mr. Hathaway's act of continuing to work for General Mills after the establishment of the 1980 rates established as a matter of law that Hathaway would be compensated at the new rates. In its second and third points of error, General Mills contends that the trial court erred in overruling General Mills' motions for judgment and new trial which requested the court to disregard the jury's finding that Hathaway did not accept the 1980 rate change since Hathaway's act of continuing to work for General Mills after the assignment of his new rates established as a matter of law his acceptance of those rates. General Mills further contends that it was not nec-essary for it to prove that Hathaway accepted the new rates since as a matter of law he was bound by them.

■ Hathaway was not hired for a certain period of time. There was nothing in the contractual arrangement to bind either party as to duration. General Mills could terminate Hathaway's employment at any time, and Hathaway had the right to quit at any time. Texas law recognizes this type of contract as being terminable at will. *Maus v. National Living Centers, Inc.*, 633 S.W.2d 674, 675–676 (Tex.App.—Austin 1982, writ ref'd n.r.e.); *Watson v. Zep Manufacturing Co.*, 582 S.W.2d 178, 179–180 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Such a contract may be terminated by either party at any time for any reason, and either party has the right to modify the terms of such a contract. *Mitsubishi Aircraft International, Inc. v. Maurer*, 675 S.W.2d 286, 288 (Tex.App.—Dallas 1984, no writ). If a change is made, the other party may perform pursuant to the terms as modified or end the relationship.

General Mills contends that the disposition of the instant case is controlled by the decision in *L.G. Balfour Co. v. Brown*, 110 S.W.2d 104 (Tex.Civ.App.—Fort Worth 1937, no writ), which involved a contract which was terminable at will. In *Balfour*, an employer brought suit against a former salesman claiming conversion by the salesman of materials and other merchandise belonging to the employer and also claiming recovery for a deficit growing out of former accountings. The salesman counterclaimed to recover commissions on certain sales. In *Balfour*, the employer had informed the salesman by letter that his bonuses on sales would be reduced and the salesman had protested the change. The trial court found that the salesman did not consent to the modification of the compensation under the original contract and thus the original contract remained in full force. The trial court entered judgment for the employee for the bonuses. The court of civil appeals held, however, that when an

employer notifies an employee of a change in the terms of a contract terminable at will, the employee must then elect whether to continue working under the new changes. He cannot continue working relying upon the old terms. Since the salesman continued to work for his employer after receipt of the letter and accepted payments from the employer, he elected to accept the new terms. *Balfour,* 110 S.W.2d at 107.

In the instant case, Berkeley, the national sales manager, first notified Hathaway of the change in commission rates. According to Hathaway, he expressed to Berkeley that he did not like the new rates. Hathaway further testified that Berkeley advised him to return home and discuss the matter with a Mr. Duncan, another salesman with General Mills. While this is emphatically denied by Berkeley, the record conclusively shows that Duncan had no authority to commit General Mills in any way. Therefore, even if we accept what Hathaway said as true, Duncan could not have changed what Hathaway was told in New York. Hathaway testified that he discussed the matter with Duncan, but admits no resolution was achieved. It was during these discussions with Duncan that Hathaway received the confirmation letter assigning the new rates. If Hathaway had any personal doubts about the new rates, we believe that that letter would have dispelled any such doubts. Hathaway did not acknowledge the letter *but continued to work.* He was terminated a few months later. Upon termination, he was paid the commissions measured by the new 1980 rates.

■ Once Hathaway was put on notice of the change in commission rates, he could either terminate his employment or accept the new rates. Under a contract terminable at will, when an employer informs an employee of what his remuneration will be, it is not up to the employee to disagree to the terms, but simply to either quit or work. If he chooses to work, he accepts the rate of remuneration as announced by the employer as a matter of law. *Balfour,*

110 S.W.2d at 107–108. It was error for the trial court to overrule the motions for judgment and new trial by General Mills since Hathaway's act of continuing to work for General Mills, after being informed of the new rates, established his acceptance of the new rates as a matter of law.

■ Since Hathaway's act of working constituted acceptance of the new rates as a matter of law, the jury's answer to special issue number 2 is immaterial, which was in essence that Hathaway had not accepted the new rates. The trial court should have disregarded the answer to that issue since acceptance was established as a matter of law. *Carter v. Associates Discount Corp.,* 550 S.W.2d 399, 400 (Tex.Civ. App.—Amarillo 1977, no writ). Furthermore, with respect to special issue number 3, the jury's finding that Hathaway did not ratify the change is immaterial since he did accept the change by his actions. With respect to special issue number 4, where the jury found that General Mills ratified Hathaway's refusal to accept the new rates, this is also immaterial, since as a matter of law he did not refuse. See generally *Adkins v. Texas & P. Ry. Co.,* 233 S.W.2d 956, 958 (Tex.Civ.App.—Fort Worth 1950, writ ref'd). Of course, special issue number 6 finding the amount of attorney's fees is also immaterial.

We are mindful of the line of cases, including *Stowers v. Harper,* 376 S.W.2d 34 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.), which held that an employer must prove that his proposed modification was made known to the employee and that the employee accepted the terms of the proposed modification. That is, actual notice is required and constructive notice is not sufficient. *Stowers,* 376 S.W.2d at 39. In *Stowers,* the employee did not know of the method used by the employer in computing the compensation nor did he have access to the company books and accounts. We distinguish the case at hand since Hathaway was notified of the 1980 rates at the January, 1980, meeting with Berkeley. Even if Hathaway was in any way misled by the opportunity to talk to Duncan, the new

rates were again stated in the confirmation letter sent to him in February, 1980. Although Hathaway also testified that Duncan agreed that Hathaway should not sign the letter and that Duncan would talk to Berkeley, this conversation does not negate the fact that Hathaway had been informed of the new rates. Hathaway contends that upon termination he was assured that he would be paid "full commissions." That term did not relate to rates and he was paid his commissions based upon the 1980 rates.

Accordingly, the judgment of the trial court is reversed and rendered in favor of General Mills that the Hathaways take nothing. Costs are assessed against appellees.

VANCE, J., dissenting.

VANCE, Justice, dissenting.

I respectfully dissent and would affirm the judgment of the trial court. Under *L.G. Balfour Co. v. Brown*, 110 S.W.2d 104 (Tex.Civ.App.—Fort Worth 1937, no writ), where an employer modifies an employment contract which is terminable at will the employee must elect either to terminate the contract by quitting or, by continuing to work, to accept the modifications. However, before the employee can be held as a matter of law to have accepted the modifications, the employer must establish that the employee unequivocally knew of the modifications. *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Knowledge of modifications to a contract is a question of fact to be decided by the jury. *Stowers v. Harper*, 376 S.W.2d at 39. Thus, this court cannot hold as a matter of law that Hathaway unequivocally knew of the modifications. Here, the jury evidently chose to believe Hathaway's testimony that Gary Duncan previously represented himself to Hathaway and others as regional sales manager for General Mills and told Hathaway that he would "handle" the commission rate dispute and "not to worry" about it. Moreover, the jury apparently believed that Hathaway did not unequivocally know that General Mills had modified the con-

tract and that Hathaway thought the commission rates were still in dispute. This is unlike the situation in *Balfour, supra*, where the employee was unequivocally notified of commission rate modifications by actually receiving a commission check based on the lower rates during his continued employment. Hathaway did not receive any commission payments based on the new rates until after General Mills fired him. We cannot substitute our belief on Hathaway's knowledge for the jury's in returning a verdict for Hathaway.

No special issue on Hathaway's knowledge of the modifications was submitted to the jury and no written findings on it were made by the trial court. Because this omitted issue is necessary to Hathaway's recovery on the original contract, this issue must be deemed to have been found by the trial court to support the jury verdict and judgment. We must deem that the trial court found Hathaway had no knowledge of the modifications. *Harmes v. Arklatex Corp.*, 615 S.W.2d 177, 179 (Tex.1981); TEX.R. CIV.P. 279.

Thus, because the trial court is deemed to have found that Hathaway did not know of the modifications, he could not have accepted them. The old commission rates still applied and Hathaway is entitled to compensation based upon them. I would affirm the trial court's judgment.