NUMBER 13-06-00430-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


GEODOMINION PETROLEUM, INC. AND Appellants,

GEODOMINION PETROLEUM, A TEXAS

GENERAL PARTNERSHIP,


v.
 


BOONE EXPLORATION, INC., Appellee.

 

On appeal from the 25th District Court 


of Lavaca County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza
Memorandum Opinion by Justice Rodriguez



 This is a contract dispute between appellants, Geodominion Petroleum, Inc. and
Geodominion Petroleum, a Texas General Partnership (Geodominion), entities involved
in exploring for oil and gas in South Texas, and appellee, Boone Exploration, Inc. (Boone),
a seismic contractor. The dispute arose out of a three-dimensional seismic survey (the
shoot) on the North Vienna Prospect in Lavaca County, Texas. By two issues,
Geodominion asserts that it terminated the contract upon which Boone sued and, thus, the
jury should have awarded no lost profits. By a third issue, Geodominion contends that the
trial court erred in granting summary judgment dismissing its counterclaim under the Texas
Deceptive Trade Practices Act (DTPA). We affirm.

I. Procedural Background

 Boone brought suit against Geodominion seeking to recover payment for work
performed on the shoot and claiming lost profits for not being allowed to finish the shoot. 
Boone's theories of recovery included breach of contract, promissory estoppel, and
quantum meruit. In response, Geodominion filed a counterclaim alleging breach of
contract, negligence, violations of the DTPA, and breach of warranty. (1) Prior to trial, Boone
moved for partial summary judgment on Geodominion's negligence and DTPA
counterclaims urging, among other things, that the DTPA claim fell within the "large
transactions" exemption, an affirmative defense Boone had pleaded. See Tex. Bus. &
Comm. Code Ann. § 17.49(g) (Vernon Supp. 2008). The trial court granted Boone an
interlocutory summary judgment and dismissed Geodominion's negligence and DTPA
claims.

 Trial on the remaining claims, including breach of contract, quantum meruit,
promissory estoppel, and breach of warranty, was to a jury. At the close of evidence, the
trial court denied Geodominion's request for the submission of a jury question that asked
whether Geodominion had given "written notice of termination of the Agreements in the
November 30, 2004 letter." The jury found that Boone and Geodominion agreed to the
terms in the contract and that Geodominion failed to comply with the contract, without
excuse. The jury also found that Boone did not fail to comply with the contract. The jury
awarded Boone $320,000 for work performed and $473,344 for lost profits. It also
awarded attorney's fees. Geodominion filed a motion to disregard which the trial court
denied and a motion for new trial which was overruled by operation of law. This appeal
ensued.

II. Termination of Agreement

 In its first issue, Geodominion contends that, as a matter of law, it terminated the 
contract through a November 30, 2004 letter to Boone, and because it terminated the
agreement, no lost profits should have been awarded to Boone. Geodominion argues that
the November 30 letter gave Boone notice of termination when it suggested that
Geodominion would only continue its relationship with Boone if Boone agreed to modify
the contract. It also asserts that because this is an "at-will" contractual relationship, it can
be terminated at any time by either party and one party may, at any time, offer the other
party a choice to agree to modify the contract or to end the relationship. We disagree and
are not persuaded by Geodominion's reliance on W.G. Pettigrew Distrib. Co. v. Borden,
Inc., 976 F. Supp. 1043, 1054 (S.D. Tex. 1996), aff'd, 127 F.3d 34 (5th Cir. 1997).


 It is undisputed that the language of the contract between Geodominion and Boone
required thirty days written notice of the intent to terminate. The written agreement that
governed the parties' rights and obligations and termination of those rights and obligations
was composed of two parts. The first part was a master agreement (the Basic Agreement)
that addressed, in part, termination. The second part was Supplemental Agreement No.
2 (the Supplemental Agreement) that provided the detailed terms, conditions and technical
specifications for Boone to record seismic data over 22.45 square miles in Lavaca County. 
Article XV of the Basic Agreement provided for a three-year term from the date of the last
Supplemental Agreement "unless terminated by either party giving the other party thirty
(30) days written notice of intention to cancel."

 Geodominion claims that the November 30 letter provided termination notice. 
However, our review of the letter reveals only that it discussed Geodominion's concerns
regarding the terms of the Supplemental Agreement; Timeslice Technology, Inc.'s
(Timeslice) alleged lack of authorization to sign the agreement on behalf of Geodominion;
and a suggested payment amount that it believed to be fair. The letter closed with the
following: "I sincerely hope we resolve this problem and both our companies can work
together in January 2005 to complete this project under a mutually agreeable contract."

 While suggesting modifications, the letter did not evidence termination; we therefore
cannot conclude that its language gave a thirty-day notice of termination as required by the
Basic Agreement. See Dows v. Nat'l Exch. Bank of Milwaukee, 91 U.S. 618, 629 (U.S.
1875) (providing that the construction of the language in the letter is in the province of the
court, and does not create a fact issue to be determined by the jury); El Paso Natural Gas
Co. v. Minco Oil & Gas, 8 S.W.3d 309, 312-16 (Tex. 1999) (construing termination letters
as a matter of law); see Exch. Bank & Trust Co. v. Lone Star Life Ins. Co., 546 S.W.2d
948, 953 (Tex. Civ. App.-Dallas 1977, no writ) (concluding that because a question of legal
construction is a question of law for the court rather than a question of fact for the jury, the
trial judge was authorized to construe the commitment letter on motion for summary
judgment). Moreover, while the Texas courts have recognized that one party's declaration
of an intention to modify an at-will contract constitutes a declaration of the option to
terminate, see L.G. Balfour Co. v. Brown, 110 S.W.2d 104, 106-07 (Tex. Civ. App.-Fort
Worth 1937, no writ), we cannot conclude that the letter gave notice of termination on that
basis. Even were we to agree that "at-will" authority applies, "[t]o prove notice, an
employer asserting a modification must prove that he unequivocally notified the employee
of definite changes in employment terms." Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227,
229 (Tex. 1986). In this case, Geodominion did not conclusively prove unequivocal
notification.

 Geodominion further contends that the November 30 letter, in combination with a
November 11, 2004 meeting between it and Boone, effected termination. At trial, Rick
Geisler, a principal owner in this case, testified that, at the November 11 meeting,
Geodominion informed Boone it could not live under the Supplemental Agreement. (2) 
Geisler also testified that Timeslice did not have the authority to sign the Supplemental
Agreement on Geodominion's behalf. However, the jury found that Geodominion agreed
to the contract, and, for the purposes of this appeal, Geodominion does not challenge this
finding. Finally, Geisler testified that Geodominion asked Boone to make another offer on
how it could complete the project "and we would consider it. But we would not continue
on under the current ways that we have."

 Kinney Simon testified, "I think we made it quite clear . . . [at the meeting] that we
did not agree with the supplemental agreement, its terms, did not feel bound by that
agreement; and as far as we were concerned, the agreement between us at that point was
terminated."

 Lynn Boone, the owner of Boone Exploration, testified that he felt "ambushed" at
the meeting. He further testified that "in this meeting . . . , they asked me if we would go
back down and [complete the shoot], and I said 'yes, if we can work out this money we
will.'" After the meeting, Boone spoke with Marion Bone, the owner of Timeslice,
explaining "even though, you know, I - that was all I wanted to do was get paid and get out
of this deal. And, you know, I told Marion, I said 'Marion, you know, he didn't even know
there was a deal.'" Boone also testified that "no one terminated our contract." Additionally,
on December 1, 2004, in response to the November 30 letter, Boone wrote Geodominion
explaining that he felt "caught in the middle of cost over runs [sic] on your job that were
beyond our control. As reiterated numerous times and stipulated in our contract, Boone
Exploration, Inc. had hired on a day rate basis with no production quotas proposed." The
letter closed by saying "[w]e join you with the hope that we can quickly resolve this matter
and work together on future projects."

 Considering the agreements, the evidence regarding the circumstances surrounding
the drafting of the letter, and the correspondence between the parties, we conclude that
the only construction of the language in the November 30 letter is that it did not provide
contractual notice of termination. Geodominion unilaterally characterizes the evidence of
an offer of modification as proof that it provided notice of termination of the agreement. 
We reject Geodominion's view of the evidence. Geodominion could have terminated
pursuant to the thirty-day contractual notice period and replaced Boone, but it did not do
so. Thus, we conclude that the legal effect of the letter established, as a matter of law, that
Geodominion had not terminated the contract--that Geodominion did not give notice of
termination when it suggested that Geodominion would only continue its relationship with
Boone if Boone agreed to modify the Supplemental Agreement. Accordingly, we overrule
Geodominion's first issue. (3)III. DTPA Counterclaim

 By its third issue, Geodominion contends that the trial court erred in granting
summary judgment on its DTPA counterclaim because the DTPA's "large transaction"
exemption does not apply. We disagree.

A. Standard of Review and Applicable Law

 "A defendant is entitled to summary judgment on an affirmative defense if the
defendant conclusively proves all the elements of the affirmative defense." East Hill
Marine, Inc. v. Rinker Boat Co., Inc., 229 S.W.3d 813, 815-16 (Tex. App.-Fort Worth 2007,
pet. denied) (citing Rhone-Poulenc, Inc. v. Ramirez, 997 S.W.2d 217, 223 (Tex. 1999));
see Tex. R. Civ. P. 166a(b), (c); Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex.
1996) (per curiam). Once the movant establishes its right to summary judgment as a
matter of law, the burden shifts to the nonmovant to present evidence that raises a genuine
issue of material fact, thereby precluding summary judgment. See Pace v. Pace, 160
S.W.3d 706, 714 (Tex. App.-Dallas 2005, pet. denied) (citing City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979)). The propriety of summary
judgment is a question of law, and we thus review the trial court's ruling de novo. Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003); Sw. Bell Tel., L.P. v.
Ballenger Const. Co., 230 S.W.3d 489, 491 (Tex. App.-Corpus Christi 2007, no pet.). 
"When reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in the
nonmovant's favor." IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 739 (Tex.
App.-Fort Worth 2005, pet. denied).

 Subsection (g) of section 17.49 of the Texas Business and Commerce Code
provides the following:

 Nothing in this subchapter shall apply to a cause of action arising from a
transaction, a project, or a set of transactions relating to the same project,
involving total consideration by the consumer of more than $500,000, other
than a cause of action involving a consumer's residence.


Tex. Bus. & Comm. Code Ann. § 17.49(g) (Vernon Supp. 2008). In other words, the
business and commerce code exempts from the DTPA causes of action arising from a
transaction if the total consideration amounts to more than $500,000. East Hill Marine, 229
S.W.3d at 820. "The purpose of this exemption is to maintain the DTPA as a viable source
of relief for consumers in small transactions and to remove litigation between businesses
over large transactions from the scope of the DTPA." Id. (citing Citizens Nat'l Bank v. Allen
Rae Invs., Inc., 142 S.W.3d 459, 473-74 (Tex. App.-Fort Worth 2004, no pet.) (op. on
reh'g)).

B. Whether the "Large Transactions" Exemption Bars Geodominion's DTPA Claims

 Challenging the "total consideration" language of section 17.49(g), Geodominion
contends that the "total consideration" at issue here did not exceed $500,000, thus, the
"large exemptions" exception did not bar its DTPA claim. It argues that the approach this
Court should use in determining "total consideration" is the value of consideration at the
time the contract was made or induced. See Space Maker Designs, Inc. v. Weldon F.
Stump & Co., No. 3:02-CV-0378-H, 2003 WL 21414726 at *2 (N.D. Tex. 2003) (mem. op.)
(finding, on a motion in limine challenge, that in determining "total consideration" of a
transaction, the value of the consideration promised when the contract was executed
determines "total consideration" under section 17.49(g) and not the actual value conveyed
in the contract). (4) Under this analysis, Geodominion asserts that because the Supplemental
Agreement was not a turn-key contract and provided only for a day-rate of $24,500 without
any provision for the total number of days to be worked, if the shoot could reasonably have
been completed in less than 21 days, the "total consideration" would not have exceeded
$500,000 (noting that $24,500 times 20 days equals $490,000). Geodominion also
calculated "total consideration" to be in the range of $421,000, noting that its expert,
Charles Melton, stated in his affidavit, that a well-organized contractor should have
averaged 80 to150 source points a day under normal weather conditions using vibrosis as
an energy source. It based this amount on the recording of 2,578 vibes points as provided
for in the Supplemental Agreement and an average daily acquisition rate of 150 vibes
points--the top end of Melton's estimate. Based on these numbers, Geodominion asserts
that seventeen days of recording service would have been foreseeable at the time Boone
was hired, and with the stipulated day-rate of $24,500, consideration would have been
$421,000, well below the "large transaction" exemption amount.

 In response, Boone asserts that "total consideration" is not determined at the time
of contracting, but rather is determined by the detriment Geodominion suffered. See
Citizens Nat'l Bank, 142 S.W.3d at 474 (providing an analysis of the operation of the "large
transaction" exemption and considering the legislative intent without applying its analysis). (5) 
Boone contends that, because there had been a detriment to Geodominion in excess of
$500,000--Boone had invoiced Geodominion over $800,000, and Geodominion had paid,
either directly or through Timeslice, over $500,000 of the invoiced amount--the "large
transactions" exemption of the DTPA prevented Geodominion from maintaining its
counterclaim. See id.

 In this case, however, we need not decide which approach should be used because
under either approach, the evidence supports a conclusion that the exemption applies. 
Boone presented the following evidence that establishes ranges for the value of "total
consideration" in excess of $500,000 at the time of inducement:


 The Supplemental Agreement covered approximately 22.45 square miles of 3-D
seismic acquisition. It provided a day rate of $24,500 for recording acquisition, but
did not provide the number of days to be worked.


 


 Marion Bone told Kinney Simon that the generalized cost for a 3-D over the
generalized areas for the prior six months had been running between $43,500 and
$45,000 per square mile all inclusive.




 According to Bone, prior to the execution of the agreement, Boone provided him
with turnkey bids ranging from $52,900 (less certain equipment charges) to $66,150
per square mile, and Bone communicated this information to Simon.




 In April 2004, Simon expected that, according to what Bone was telling him,
Geodominion should budget approximately $38,000 to $39,000 per square mile.




 Rick Geisler testified at his deposition that he expected 75 to 100 vibes per day and
that $24,500 per day was not objectionable.




 Simon estimated that the entire cost of the shoot would be around $750,000.


Based on information provided to Simon by Bone, the expected range for the cost of the
shoot was between $976,575 and $1,010,250, the turnkey bids ranged from $1,187,605
to $1,485,068, and Simon's budget expectations considered a range $853,100 to
$875,550. Furthermore, at Geisler's expected 100 vibes per day, according to Boone's
calculation of the above information, the shoot would have taken approximately twenty-six
days, exclusive of layout, pickup, and weather delays. At the unobjectionable rate of
$24,500 per day, a "total consideration" of $637,000 would have resulted.


 Furthermore, in arriving at its $421,000 amount, Geodominion utilized only the
uppermost end of Melton's range of 80 to 150 vibes per day and did not factor in days for
laying out and picking up equipment, although the Supplemental Agreement provided that
Boone was to be paid for that time. When applying the upper end of Melton's estimate of
vibes per day, with two days of layout and two days of pickup, the result is an amount in
excess of $500,000. And, without factoring in layout and pickup time, using the median
of Melton's range, the "total consideration" would be $591,205. Thus, these calculations,
based on Melton's affidavit and Geodominion's inducement approach, support "total
consideration" in excess of the $500,000.

 Moreover, regarding the second approach, the following summary judgment
evidence establishes that there was a detriment to Geodominion in excess of
$500,000--the invoiced amounts and the amounts paid exceeded $500,000:


 Boone had invoiced Geodominion $836,000 for services rendered under the
contract prior to the hiring of the replacement contractor.




 Geodominion, either directly or through Timeslice, had paid $515,998 of the
invoiced amount but refused to pay the remaining $320,000.



 The evidence supports a finding of "total consideration" of more than $500,000
under either approach. Boone met its initial burden of conclusively establishing that it was
entitled to summary judgment on appellant's DTPA claims because the large transaction
exemption applied. See East Hill Marine, 229 S.W.3d at 815-16. Moreover, Geodominion
did not present evidence that raised a genuine issue of material fact, thereby precluding
summary judgment. See Pace, 160 S.W.3d at 714. The exemption under section 17.49(g)
of the DTPA applies. Accordingly, the trial court was justified in granting summary
judgment on appellant's DTPA claims on the grounds that such claims were barred under
the large transactions exemption of the DTPA. We overrule Geodominion's third issue.

IV. Conclusion

 The judgment of the trial court is affirmed.


 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 14th day of August, 2008.

1. Boone also sued Timeslice Technology, Inc. (Timeslice), a company hired by Geodominion to design,
coordinate, and manage a seismic survey. Timeslice took bids from various seismic contractors, including
Boone. Geodominion also filed a cross-action against Timeslice. However, prior to trial, the court rendered
summary judgment that Boone take nothing against Timeslice on Boone's breach of contract claim. And,
during trial, Geodominion and Timeslice settled with each other. Thus, Timeslice is not a party to this appeal.


Also, prior to trial, the trial court severed claims by which Geodominion sought to recover from Boone certain
damages Geodominion had paid to various landowners whose properties were involved in the shoot. 
According to Geodominion, the landowner claims remain pending in the severed suit.
2. Geodominion is a partnership, the principals of which are corporations owned respectively by Rick
Geisler and Kinney Simon.
3. Having determined the legal effect of the November 30, 2004 letter was that it did not, as a matter
of law, terminate the contract, we need not address Geodominion's second issue where it contends,
alternatively, that Geodominion is entitled to a new trial because the letter raised an issue of fact and the trial
court erred in refusing Geodominion's requested question on termination. See Tex. R. App. P. 47.1.
4. In Space Maker Designs, Inc. v. Weldon F. Stump & Co., the federal court determined that Stump
was induced to enter the contract by the promise of $519,000 in payment for the manufacturing equipment
it was to deliver and install. No. 3:02-CV-0378-H, 2003 WL 21414726, at *2 (N.D. Tex. 2003) (mem. op.). 
The court explained that the fact that the actual value was $472,500 due to various non-performances by
Stump did not change the value of consideration promised at the time of contracting. Id. It reasoned that
"applying an ex ante approach rather than an ex post one allows parties to a contract to know with certainty
whether their contract will fit within the coverage of the DTPA." Id.
5. In Citizens Nat'l Bank v. Allen Rae Investments, Inc., the Fort Worth Court of Appeals, referring to
"consideration" as used in section 17.49(g) of the Texas Deceptive Trade Practices Act, set out the following:


 Under Texas case law, "consideration is a present exchange bargained for in return for a
promise. It consists of either a benefit to the promissor or a detriment to the promisee." 
Roark v. Stilworth Oil & Gas, inc., 813 S.W.2d 492, 496 (Tex. 1991). Similarly, in the sixth
edition of Black's Law Dictionary, consideration is defined as "some right, interest, profit or
benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given,
suffered, or undertaken by the other," . . . . Black's Law Dictionary 306-07 (6th ed. 1990).


142 S.W.3d 459, 474 (Tex. App.-Fort Worth 2004, no pet.) (op. on reh'g); see Nationwide of Fort Worth, Inc.
v. Wigington, 945 S.W.2d 883, 883-85 (Tex. App.-Waco 1997, writ dism'd w.o.j.) (addressing definition of
"total consideration to be paid" in determining issue of whether the trial court erred in denying Nationwide's
motion to compel arbitration under an exception provision, section 171.001 of the Texas General Arbitration
Act).