

NUMBER 13-06-00430-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

GEODOMINION PETROLEUM, INC. AND GEODOMINION PETROLEUM, A TEXAS GENERAL PARTNERSHIP,                                                                 Appellants,

**v.**

BOONE EXPLORATION, INC.,                                                                 Appellee.

### On appeal from the 25th District Court of Lavaca County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

This is a contract dispute between appellants, Geodominion Petroleum, Inc. and

Geodominion Petroleum, a Texas General Partnership (Geodominion), entities involved

in exploring for oil and gas in South Texas, and appellee, Boone Exploration, Inc. (Boone),

a seismic contractor. The dispute arose out of a three-dimensional seismic survey (the

shoot) on the North Vienna Prospect in Lavaca County, Texas. By two issues, Geodominion asserts that it terminated the contract upon which Boone sued and, thus, the jury should have awarded no lost profits. By a third issue, Geodominion contends that the trial court erred in granting summary judgment dismissing its counterclaim under the Texas Deceptive Trade Practices Act (DTPA). We affirm.

## I. Procedural Background

Boone brought suit against Geodominion seeking to recover payment for work performed on the shoot and claiming lost profits for not being allowed to finish the shoot. Boone's theories of recovery included breach of contract, promissory estoppel, and quantum meruit. In response, Geodominion filed a counterclaim alleging breach of contract, negligence, violations of the DTPA, and breach of warranty.[1] Prior to trial, Boone moved for partial summary judgment on Geodominion's negligence and DTPA counterclaims urging, among other things, that the DTPA claim fell within the "large transactions" exemption, an affirmative defense Boone had pleaded. *See* TEX. BUS. & COMM. CODE ANN. § 17.49(g) (Vernon Supp. 2008). The trial court granted Boone an interlocutory summary judgment and dismissed Geodominion's negligence and DTPA claims.

---

[1]Boone also sued Timeslice Technology, Inc. (Timeslice), a company hired by Geodominion to design, coordinate, and manage a seismic survey. Timeslice took bids from various seismic contractors, including Boone. Geodominion also filed a cross-action against Timeslice. However, prior to trial, the court rendered summary judgment that Boone take nothing against Timeslice on Boone's breach of contract claim. And, during trial, Geodominion and Timeslice settled with each other. Thus, Timeslice is not a party to this appeal.

Also, prior to trial, the trial court severed claims by which Geodominion sought to recover from Boone certain damages Geodominion had paid to various landowners whose properties were involved in the shoot. According to Geodominion, the landowner claims remain pending in the severed suit.

Trial on the remaining claims, including breach of contract, quantum meruit, promissory estoppel, and breach of warranty, was to a jury. At the close of evidence, the trial court denied Geodominion's request for the submission of a jury question that asked whether Geodominion had given "written notice of termination of the Agreements in the November 30, 2004 letter." The jury found that Boone and Geodominion agreed to the terms in the contract and that Geodominion failed to comply with the contract, without excuse. The jury also found that Boone did not fail to comply with the contract. The jury awarded Boone $320,000 for work performed and $473,344 for lost profits. It also awarded attorney's fees. Geodominion filed a motion to disregard which the trial court denied and a motion for new trial which was overruled by operation of law. This appeal ensued.

## II. Termination of Agreement

In its first issue, Geodominion contends that, as a matter of law, it terminated the contract through a November 30, 2004 letter to Boone, and because it terminated the agreement, no lost profits should have been awarded to Boone. Geodominion argues that the November 30 letter gave Boone notice of termination when it suggested that Geodominion would only continue its relationship with Boone if Boone agreed to modify the contract. It also asserts that because this is an "at-will" contractual relationship, it can be terminated at any time by either party and one party may, at any time, offer the other party a choice to agree to modify the contract or to end the relationship. We disagree and are not persuaded by Geodominion's reliance on *W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. 1043, 1054 (S.D. Tex. 1996), *aff'd,* 127 F.3d 34 (5th Cir. 1997).

3

It is undisputed that the language of the contract between Geodominion and Boone required thirty days written notice of the intent to terminate. The written agreement that governed the parties' rights and obligations and termination of those rights and obligations was composed of two parts. The first part was a master agreement (the Basic Agreement) that addressed, in part, termination. The second part was Supplemental Agreement No. 2 (the Supplemental Agreement) that provided the detailed terms, conditions and technical specifications for Boone to record seismic data over 22.45 square miles in Lavaca County. Article XV of the Basic Agreement provided for a three-year term from the date of the last Supplemental Agreement "unless terminated by either party giving the other party thirty (30) days written notice of intention to cancel."

Geodominion claims that the November 30 letter provided termination notice. However, our review of the letter reveals only that it discussed Geodominion's concerns regarding the terms of the Supplemental Agreement; Timeslice Technology, Inc.'s (Timeslice) alleged lack of authorization to sign the agreement on behalf of Geodominion; and a suggested payment amount that it believed to be fair. The letter closed with the following: "I sincerely hope we resolve this problem and both our companies can work together in January 2005 to complete this project under a mutually agreeable contract."

While suggesting modifications, the letter did not evidence termination; we therefore cannot conclude that its language gave a thirty-day notice of termination as required by the Basic Agreement. *See Dows v. Nat'l Exch. Bank of Milwaukee*, 91 U.S. 618, 629 (U.S. 1875) (providing that the construction of the language in the letter is in the province of the court, and does not create a fact issue to be determined by the jury); *El Paso Natural Gas Co. v. Minco Oil & Gas*, 8 S.W.3d 309, 312-16 (Tex. 1999) (construing termination letters

4

as a matter of law); *see Exch. Bank & Trust Co. v. Lone Star Life Ins. Co.*, 546 S.W.2d 948, 953 (Tex. Civ. App.–Dallas 1977, no writ) (concluding that because a question of legal construction is a question of law for the court rather than a question of fact for the jury, the trial judge was authorized to construe the commitment letter on motion for summary judgment). Moreover, while the Texas courts have recognized that one party's declaration of an intention to modify an at-will contract constitutes a declaration of the option to terminate, *see L.G. Balfour Co. v. Brown*, 110 S.W.2d 104, 106-07 (Tex. Civ. App.–Fort Worth 1937, no writ), we cannot conclude that the letter gave notice of termination on that basis. Even were we to agree that "at-will" authority applies, "[t]o prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). In this case, Geodominion did not conclusively prove unequivocal notification.

Geodominion further contends that the November 30 letter, in combination with a November 11, 2004 meeting between it and Boone, effected termination. At trial, Rick Geisler, a principal owner in this case, testified that, at the November 11 meeting, Geodominion informed Boone it could not live under the Supplemental Agreement.[2] Geisler also testified that Timeslice did not have the authority to sign the Supplemental Agreement on Geodominion's behalf. However, the jury found that Geodominion agreed to the contract, and, for the purposes of this appeal, Geodominion does not challenge this finding. Finally, Geisler testified that Geodominion asked Boone to make another offer on

---

[2]Geodominion is a partnership, the principals of which are corporations owned respectively by Rick Geisler and Kinney Simon.

how it could complete the project "and we would consider it. But we would not continue on under the current ways that we have."

Kinney Simon testified, "I think we made it quite clear . . . [at the meeting] that we did not agree with the supplemental agreement, its terms, did not feel bound by that agreement; and as far as we were concerned, the agreement between us at that point was terminated."

Lynn Boone, the owner of Boone Exploration, testified that he felt "ambushed" at the meeting. He further testified that "in this meeting . . . , they asked me if we would go back down and [complete the shoot], and I said 'yes, if we can work out this money we will.'" After the meeting, Boone spoke with Marion Bone, the owner of Timeslice, explaining "even though, you know, I – that was all I wanted to do was get paid and get out of this deal. And, you know, I told Marion, I said 'Marion, you know, he didn't even know there was a deal.'" Boone also testified that "no one terminated our contract." Additionally, on December 1, 2004, in response to the November 30 letter, Boone wrote Geodominion explaining that he felt "caught in the middle of cost over runs [sic] on your job that were beyond our control. As reiterated numerous times and stipulated in our contract, Boone Exploration, Inc. had hired on a day rate basis with no production quotas proposed." The letter closed by saying "[w]e join you with the hope that we can quickly resolve this matter and work together on future projects."

Considering the agreements, the evidence regarding the circumstances surrounding the drafting of the letter, and the correspondence between the parties, we conclude that the only construction of the language in the November 30 letter is that it did not provide contractual notice of termination. Geodominion unilaterally characterizes the evidence of

6

an offer of modification as proof that it provided notice of termination of the agreement. We reject Geodominion's view of the evidence. Geodominion could have terminated pursuant to the thirty-day contractual notice period and replaced Boone, but it did not do so. Thus, we conclude that the legal effect of the letter established, as a matter of law, that Geodominion had not terminated the contract—that Geodominion did not give notice of termination when it suggested that Geodominion would only continue its relationship with Boone if Boone agreed to modify the Supplemental Agreement. Accordingly, we overrule Geodominion's first issue.[3]

## III. DTPA Counterclaim

By its third issue, Geodominion contends that the trial court erred in granting summary judgment on its DTPA counterclaim because the DTPA's "large transaction" exemption does not apply. We disagree.

## A. Standard of Review and Applicable Law

"A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense." *East Hill Marine, Inc. v. Rinker Boat Co.,* Inc., 229 S.W.3d 813, 815-16 (Tex. App.–Fort Worth 2007, pet. denied) (citing *Rhone-Poulenc, Inc. v. Ramirez*, 997 S.W.2d 217, 223 (Tex. 1999)); *see* TEX. R. CIV. P. 166a(b), (c); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam). Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence that raises a genuine

---

[3]Having determined the legal effect of the November 30, 2004 letter was that it did not, as a matter of law, terminate the contract, we need not address Geodominion's second issue where it contends, alternatively, that Geodominion is entitled to a new trial because the letter raised an issue of fact and the trial court erred in refusing Geodominion's requested question on termination. *See* TEX. R. APP. P. 47.1.

7

issue of material fact, thereby precluding summary judgment. *See Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.–Dallas 2005, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979)). The propriety of summary judgment is a question of law, and we thus review the trial court's ruling de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Sw. Bell Tel., L.P. v. Ballenger Const. Co.*, 230 S.W.3d 489, 491 (Tex. App.–Corpus Christi 2007, no pet.). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 739 (Tex. App.–Fort Worth 2005, pet. denied).

Subsection (g) of section 17.49 of the Texas Business and Commerce Code provides the following:

> Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

TEX. BUS. & COMM. CODE ANN. § 17.49(g) (Vernon Supp. 2008). In other words, the business and commerce code exempts from the DTPA causes of action arising from a transaction if the total consideration amounts to more than $500,000. *East Hill Marine*, 229 S.W.3d at 820. "The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA." *Id.* (citing *Citizens Nat'l Bank v. Allen*

8

*Rae Invs., Inc.,* 142 S.W.3d 459, 473-74 (Tex. App.–Fort Worth 2004, no pet.) (op. on reh'g)).

  B.  Whether the "Large Transactions" Exemption Bars Geodominion's DTPA Claims

     Challenging the "total consideration" language of section 17.49(g), Geodominion contends that the "total consideration" at issue here did not exceed $500,000, thus, the "large exemptions" exception did not bar its DTPA claim.  It argues that the approach this Court should use in determining "total consideration" is the value of consideration at the time the contract was made or induced.  *See Space Maker Designs, Inc. v. Weldon F. Stump & Co.,* No. 3:02-CV-0378-H, 2003 WL 21414726 at *2 (N.D. Tex. 2003) (mem. op.) (finding, on a motion in limine challenge, that in determining "total consideration" of a transaction, the value of the consideration promised when the contract was executed determines "total consideration" under section 17.49(g) and not the actual value conveyed in the contract).[4]  Under this analysis, Geodominion asserts that because the Supplemental Agreement was not a turn-key contract and provided only for a day-rate of $24,500 without any provision for the total number of days to be worked, if the shoot could reasonably have been completed in less than 21 days, the "total consideration" would not have exceeded $500,000 (noting that $24,500 times 20 days equals $490,000).  Geodominion also calculated "total consideration" to be in the range of $421,000, noting that its expert, Charles Melton, stated in his affidavit, that a well-organized contractor should have

---

[4]In *Space Maker Designs, Inc. v. Weldon F. Stump & Co.*, the federal court determined that Stump was induced to enter the contract by the promise of $519,000 in payment for the manufacturing equipment it was to deliver and install.  No. 3:02-CV-0378-H, 2003 WL 21414726, at *2 (N.D. Tex. 2003) (mem. op.). The court explained that the fact that the actual value was $472,500 due to various non-performances by Stump did not change the value of consideration promised at the time of contracting.  *Id.*  It reasoned that "applying an *ex ante* approach rather than an *ex post* one allows parties to a contract to know with certainty whether their contract will fit within the coverage of the DTPA."  *Id.*

9

averaged 80 to150 source points a day under normal weather conditions using vibrosis as an energy source. It based this amount on the recording of 2,578 vibes points as provided for in the Supplemental Agreement and an average daily acquisition rate of 150 vibes points—the top end of Melton's estimate. Based on these numbers, Geodominion asserts that seventeen days of recording service would have been foreseeable at the time Boone was hired, and with the stipulated day-rate of $24,500, consideration would have been $421,000, well below the "large transaction" exemption amount.

In response, Boone asserts that "total consideration" is not determined at the time of contracting, but rather is determined by the detriment Geodominion suffered. *See Citizens Nat'l Bank*, 142 S.W.3d at 474 (providing an analysis of the operation of the "large transaction" exemption and considering the legislative intent without applying its analysis).[5] Boone contends that, because there had been a detriment to Geodominion in excess of $500,000—Boone had invoiced Geodominion over $800,000, and Geodominion had paid, either directly or through Timeslice, over $500,000 of the invoiced amount—the "large

---

[5]In *Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, the Fort Worth Court of Appeals, referring to "consideration" as used in section 17.49(g) of the Texas Deceptive Trade Practices Act, set out the following:

> Under Texas case law, "consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promissor or a detriment to the promisee." *Roark v. Stilworth Oil & Gas, inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Similarly, in the sixth edition of Black's Law Dictionary, consideration is defined as "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other," . . . . BLACK'S LAW DICTIONARY 306-07 (6th ed. 1990).

142 S.W.3d 459, 474 (Tex. App.–Fort Worth 2004, no pet.) (op. on reh'g); *see Nationwide of Fort Worth, Inc. v. Wigington*, 945 S.W.2d 883, 883-85 (Tex. App.–Waco 1997, writ dism'd w.o.j.) (addressing definition of "total consideration to be paid" in determining issue of whether the trial court erred in denying Nationwide's motion to compel arbitration under an exception provision, section 171.001 of the Texas General Arbitration Act).

transactions" exemption of the DTPA prevented Geodominion from maintaining its counterclaim. *See id.*

In this case, however, we need not decide which approach should be used because under either approach, the evidence supports a conclusion that the exemption applies. Boone presented the following evidence that establishes ranges for the value of "total consideration" in excess of $500,000 at the time of inducement:

- The Supplemental Agreement covered approximately 22.45 square miles of 3-D seismic acquisition. It provided a day rate of $24,500 for recording acquisition, but did not provide the number of days to be worked.

- Marion Bone told Kinney Simon that the generalized cost for a 3-D over the generalized areas for the prior six months had been running between $43,500 and $45,000 per square mile all inclusive.

- According to Bone, prior to the execution of the agreement, Boone provided him with turnkey bids ranging from $52,900 (less certain equipment charges) to $66,150 per square mile, and Bone communicated this information to Simon.

- In April 2004, Simon expected that, according to what Bone was telling him, Geodominion should budget approximately $38,000 to $39,000 per square mile.

- Rick Geisler testified at his deposition that he expected 75 to 100 vibes per day and that $24,500 per day was not objectionable.

- Simon estimated that the entire cost of the shoot would be around $750,000.

Based on information provided to Simon by Bone, the expected range for the cost of the shoot was between $976,575 and $1,010,250, the turnkey bids ranged from $1,187,605 to $1,485,068, and Simon's budget expectations considered a range $853,100 to $875,550. Furthermore, at Geisler's expected 100 vibes per day, according to Boone's calculation of the above information, the shoot would have taken approximately twenty-six days, exclusive of layout, pickup, and weather delays. At the unobjectionable rate of $24,500 per day, a "total consideration" of $637,000 would have resulted.

11

Furthermore, in arriving at its $421,000 amount, Geodominion utilized only the uppermost end of Melton's range of 80 to 150 vibes per day and did not factor in days for laying out and picking up equipment, although the Supplemental Agreement provided that Boone was to be paid for that time. When applying the upper end of Melton's estimate of vibes per day, with two days of layout and two days of pickup, the result is an amount in excess of $500,000. And, without factoring in layout and pickup time, using the median of Melton's range, the "total consideration" would be $591,205. Thus, these calculations, based on Melton's affidavit and Geodominion's inducement approach, support "total consideration" in excess of the $500,000.

Moreover, regarding the second approach, the following summary judgment evidence establishes that there was a detriment to Geodominion in excess of $500,000—the invoiced amounts and the amounts paid exceeded $500,000:

• Boone had invoiced Geodominion $836,000 for services rendered under the contract prior to the hiring of the replacement contractor.

• Geodominion, either directly or through Timeslice, had paid $515,998 of the invoiced amount but refused to pay the remaining $320,000.

The evidence supports a finding of "total consideration" of more than $500,000 under either approach. Boone met its initial burden of conclusively establishing that it was entitled to summary judgment on appellant's DTPA claims because the large transaction exemption applied. *See East Hill Marine*, 229 S.W.3d at 815-16. Moreover, Geodominion did not present evidence that raised a genuine issue of material fact, thereby precluding summary judgment. *See Pace*, 160 S.W.3d at 714. The exemption under section 17.49(g) of the DTPA applies. Accordingly, the trial court was justified in granting summary

12

judgment on appellant's DTPA claims on the grounds that such claims were barred under the large transactions exemption of the DTPA. We overrule Geodominion's third issue.

## IV.  Conclusion

The judgment of the trial court is affirmed.


NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 14th day of August, 2008.